**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

G.V.V. RAO,
Plaintiff-Appellant,

v.

COUNTY OF FAIRFAX VIRGINIA; IFTIKAR
KHAN, in his individual and official
capacities; RICHARD GOZIKOSKI, in
his individual and official
capacities; JOHN DI ZEREGA, in his
individual and official capacities;

ANTHONY GRIFFIN, in his individual
and official capacities; WILLIAM J.
LEIDINGER, in his individual and
official capacities,
Defendants-Appellees,

and

THOMAS M. DAVIS, III, in his
individual and official capacities,
Defendant.

No. 96-1189

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Chief District Judge.
(CA-95-817-A)

Argued: January 29, 1997

Decided: March 3, 1997

Before HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Hamilton wrote the opinion, in which Judge Williams and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Solaman G. Lippman, Washington, D.C., for Appellant. Robert Lyndon Howell, Deputy County Attorney, Fairfax, Virginia, for Appellees. **ON BRIEF:** Richard H. Semsker, Shannon M. Salb, Washington, D.C., for Appellant. David P. Bobzien, County Attorney, Robert M. Ross, Assistant County Attorney, Fairfax, Virginia, for Appellees.

_____

**OPINION**

HAMILTON, Circuit Judge:

The principal issue in this appeal is whether the findings of the Civil Service Commission of Fairfax County (CSC), which were not reviewed by a Virginia state court, may be afforded preclusive effect in a subsequent action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-5 (1996). The district court held that the findings of the CSC were entitled to preclusive effect in a subsequent Title VII action. Because such findings may not be afforded preclusive effect under the Supreme Court's decision in University of Tenn. v. Elliott, 478 U.S. 788 (1986), we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

I.

Plaintiff/appellant, G.V.V. Rao, is a United States citizen of Indian descent who was hired as a civil engineer by the defendant/appellee, County of Fairfax, Virginia (Fairfax), on January 3, 1989. On May 2, 1989, Rao was dismissed. As a result of that dismissal, Rao filed a discrimination charge with the Fairfax office of the Equal Employment Opportunity Commission (EEOC). On July 7, 1989, Rao and Fairfax entered into a settlement agreement pursuant to which Rao's

EEOC discrimination charge was withdrawn and Rao was reinstated with no loss in position or benefits.

Rao began working for Fairfax again on July 10, 1989. Thereafter, Rao filed another charge of discrimination, this time with the CSC. Rao requested the CSC to hold a hearing on his charges of national origin discrimination and retaliation against Fairfax. In October 1991, the CSC issued its ruling, concluding that Rao was neither discriminated against nor retaliated against by Fairfax. The CSC hearing panel's decision was issued after the CSC held prehearing conferences to define issues, made a record of the evidentiary proceeding before it, allowed the parties to introduce testimony from witnesses, subjected those witnesses to cross examination, and made detailed findings of fact and conclusions based on those findings.[1]

In June 1993, Rao filed yet another charge of discrimination with the EEOC, raising claims of national origin discrimination and retaliation. The EEOC determined in August 1993 that Rao was discriminated against and retaliated against by Fairfax, but Fairfax refused conciliation. Later, after a protracted disagreement with a supervisor over a particular sewer project, Rao was suspended in September 1994 and then terminated by Fairfax three months later. Rao filed a final charge of national origin discrimination and retaliation with the EEOC in January 1995 as a result of his termination. The EEOC issued Rao a right to sue letter, and Rao timely brought this action in the United States District Court for the Eastern District of Virginia.

Rao sued Fairfax, alleging, inter alia, claims of national origin discrimination and retaliation pursuant to Title VII. The district court granted summary judgment to Fairfax on these claims based on its conclusion that the 1991 CSC determination that Rao was not discriminated against by Fairfax was entitled to preclusive effect as to Rao's Title VII claims.[2] Rao appeals.

_____

[1] Under Virginia law, the factual findings and decisions of the CSC are binding in Virginia state courts. See Va. Code Ann. § 15.1-7.2(10)(a)(6) (Michie 1991).
[2] Rao's complaint also alleged claims of national origin discrimination and retaliation against several individual defendants, violations of 42

3

II.

Our analysis of the preclusive effect of a state administrative or judicial proceeding on a subsequent federal court action begins with 28 U.S.C. § 1738, which extends to federal courts the principles embodied in the Full Faith and Credit Clause of the Constitution, U.S. Const. Art IV, § 1, cl. 1. Section 1738 provides in relevant part:

> The records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

According to the Supreme Court, in promulgating § 1738, Congress "specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96 (1980).

In Kremer v. Chem. Constr. Corp., 456 U.S. 461 (1982), the Supreme Court discussed the relationship between § 1738 and Title VII. In that case, Kremer lost his discrimination claim before the state agency responsible for enforcing New York's anti-discrimination law. Both an administrative appeal board and the Appellate Division of the New York Supreme Court affirmed the agency's decision. Kremer then filed a Title VII action in federal district court. The district court held that the agency decision should be afforded preclusive effect as to Kremer's Title VII action. The Second Circuit affirmed. The Supreme Court agreed that the Title VII claim was barred, rejecting Kremer's argument that Congress intended Title VII to be exempt from the requirements of § 1738. The Court noted in a footnote, how-

_____

U.S.C. § 1983 against Fairfax and several individual defendants, and violations of state law against certain individual defendants. The district court granted summary judgment to the defendants on these claims, and Rao does not attack these rulings on appeal. Accordingly, we review only the district court's grant of summary judgment to Rao on his national origin discrimination and retaliation claims against Fairfax.

4

ever, that § 1738 and state rules of preclusion would not apply to "unreviewed administrative determinations by state agencies." 456 U.S. at 470 n.7. The Court reasoned:

> EEOC review of discrimination charges previously rejected by state agencies would be pointless if the federal courts were bound by such agency decisions. Nor is it plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts.

Id. (citations omitted).

The footnote in Kremer became the holding of the Supreme Court's decision in Elliott. In Elliott , a black University of Tennessee employee, threatened with discharge, sought a hearing under the Tennessee Uniform Administrative Procedures Act in much the same way Rao requested a CSC hearing into his discrimination charges against Fairfax. See 478 U.S. at 790. Before the hearing was held, however, Elliott filed suit in the United States District Court for the Western District of Tennessee alleging that his proposed discharge was racially motivated and seeking relief under Title VII, § 1983, and other civil rights statutes. See id.

Following the administrative hearing involving the testimony of more than 100 witnesses and the presentation of 150 exhibits, a University of Tennessee administrative assistant, acting as an Administrative Law Judge (ALJ) under state law, determined that the University of Tennessee was not motivated by racial prejudice when it sought to discharge Elliott. See id. at 791. Elliott did not seek review of the administrative decision in the Tennessee courts, choosing instead to pursue his Title VII and civil rights claims in federal court. See id. at 792. In that suit, the University of Tennessee claimed that the ALJ's ruling was entitled to preclusive effect and moved for summary judgment on the ground that Elliott's suit amounted to an improper collateral attack on the ALJ's ruling. See id. The district court agreed and

5

granted summary judgment to the University of Tennessee. See id. The Sixth Circuit reversed. As to Elliott's Title VII claim, the Sixth Circuit concluded that, under Kremer, res judicata did not foreclose Elliott's Title VII claims because unreviewed administrative determinations by state agencies do not preclude a trial de novo in federal court on a Title VII claim, even if the adverse administrative decision is afforded preclusive effect in the state's own courts. See id. at 792-93. As to Elliott's claims under § 1983 and other civil rights statutes, the Sixth Circuit concluded that these claims also were not foreclosed by the unreviewed administrative decision. Id. at 794 (emphasis added).

In affirming in part and reversing in part, the Supreme Court first noted that § 1738 applies to state court judgments and not unreviewed administrative determinations. See id. at 794. Next, the Court considered whether a federal common-law rule of preclusion would be consistent with Congress' intent in enacting Title VII and the Reconstruction civil rights statutes. With respect to the claims arising under the Reconstruction civil rights statutes, the Court held that the administrative fact-finding could have issue preclusive (collateral estoppel) effect. See id. at 797 (no language in the Reconstruction civil rights statutes "`remotely expresses any congressional intent to contravene the common-law rules of preclusion'" (quoting Allen, 449 U.S. at 97-98)); see also Layne v. Campbell County Dep't of Social Servs., 939 F.2d 217, 219-21 (4th Cir. 1991) (administrative fact-finding can have issue preclusive effect on § 1983 claim). However, the Court reached the opposite conclusion with regard to the Title VII claim, because "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." Elliott, 478 U.S. at 796. The Court found Congressional intent for such a result in Title VII's direction that the EEOC accord "`substantial weight to final findings and orders made by State and local authorities in proceedings commenced under State or local [employment discrimination] law.'" Id. at 795 (quoting 42 U.S.C. § 2000e-5(b)). The Court reasoned that, through the Congressionally-enacted "substantial weight" standard, Congress intended something less than preclusion. Id. ("[I]t would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court.").

6

Following Elliott, circuit courts have uniformly held that unreviewed administrative agency findings can never be afforded preclusive effect in a subsequent Title VII action. See Roth v. Koppers Indus., Inc., 993 F.2d 1058, 1060-63 (3d Cir. 1993); McInnes v. California, 943 F.2d 1088, 1093-94 (9th Cir. 1991); DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 114-15 (2d Cir. 1987); Duggan v. Board of Educ., 818 F.2d 1291, 1293-95 (7th Cir. 1987); Abramson v. Council Bluffs Community Sch. Dist., 808 F.2d 1307, 1308-09 (8th Cir. 1987). As the Ninth Circuit explained in McInnes:

> The clear teaching of Elliott is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court. Under either of those circumstances, 28 U.S.C. § 1738 applies by its own terms. In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them. Section 1738 does not apply to such determinations, and the Court in Elliott refused to fashion a federal common-law rule of preclusion in the Title VII context.

943 F.2d at 1093-94.

Under Elliott, the district court's decision in this case cannot stand. The district court erred because it failed to note that despite the "adjudicatory" nature of the CSC hearing, the October 1991 decision remains, at bottom, an unreviewed state administrative determination which is not entitled to any preclusive effect in a Title VII case. See id. at 797.**3**

_____

**3** Fairfax argues that the CSC hearing panel was an actual court. This argument is without merit. When deciding whether a state hearing panel constitutes an actual court, we must engage in a two-step process. First, we look to state law to see what powers the Commonwealth vests in the CSC hearing panel. See Kremer, 456 U.S. at 466-67. Second, we look to federal law to determine whether the CSC hearing panel constitutes a "court" within the meaning of § 1738. See Adam v. Saenger, 303 U.S. 59, 64 (1938). The CSC certainly enjoys adjudicatory-type powers. For example, it can conduct hearings, make evidentiary rulings, apply the law, and a Virginia trial court can enforce its decisions. See Va. Code

Absent the district court's erroneous reliance on the 1991 CSC decision for preclusive effect on Rao's Title VII claims against Fairfax, there is no proper legal conclusion contained in the district court's order upon which Fairfax could be granted summary judgment. Thus, the record in this case is not subject to meaningful appellate review, and any appellate review of the merits of Rao's claims would be improvident at this time. Under the circumstances, it is more appropriate to vacate the district court's judgment granting summary judgment to Fairfax and remand the case to the district court with instructions to address the merits of Rao's Title VII discrimination and retaliation claims against Fairfax.

III.

For the reasons stated, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED FOR FURTHER PROCEEDINGS

_____

Ann. § 15.1-7.2. However, those adjudicatory provisions do not render the CSC hearing panel an actual court. First, a county grievance panel is provided for separately from the section of the Virginia Code defining the role of its courts. See Va. Code Ann.§§ 16.1-69.1 to 17-237. Second, the terminology used by the Virginia Code is quite instructive; it uses the term "panel hearing" to describe the process undertaken by the CSC but later mentions that "[e]ither party may petition the [local] circuit court" for enforcement of the CSC decision. See Va. Code Ann. 15.1-7.3(A)(11) (emphasis added). Moreover, the powers enjoyed by the CSC are certainly no greater than those possessed by the state agency at issue in Kremer, nor the ALJ in Elliott. Accordingly, the CSC hearing panel is not a "court" within the meaning of § 1738.

8