[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 21 2001
THOMAS K. KAHN
CLERK

_____

No. 99-13492 and
No. 00-10643

_____

D.C. No. 96-00479-CV-FAM

WALTER CRAPP,

Plaintiff-Appellee,

versus

CITY OF MIAMI BEACH,

Defendant-Appellant,

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(February 21, 2001)**

Before WILSON, KRAVITCH and COX, Circuit Judges.

KRAVITCH, Circuit Judge:

The appeal of this Title VII race discrimination case presents two main issues: whether the district court erred by treating the suspension of a police officer's certification made retroactive to the date of his termination as after-acquired evidence under McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995), and whether decisions by state administrative agencies unreviewed by state courts are entitled to preclusive effect in Title VII cases. We answer both in the negative.

I.  Background and Procedural History

Walter Crapp, who is black, worked as a police officer for the City from September 10, 1986 until his termination on November 26, 1996.[1]  In September 1996, following an argument with his supervisor, Crapp filed a complaint with Internal Affairs alleging that his supervisor had battered him.[2]  In the course of its investigation, Internal Affairs came to the conclusion that Crapp had lied about the

[1]Crapp's employment with the police department was continuous, except for a period from December 17, 1991 to February 2, 1992.

[2]On the morning of September 4, 1996, Crapp arrived at work without his weapon. According to Crapp, after roll call he obtained permission from Sgt. Zeifman to return home to retrieve his weapon.  While Crapp was away, Sgt. Weider attempted to reach him on his radio, but was unable to do so.  When he returned, Crapp explained that he had not heard the radio request because his radio battery had malfunctioned.  Crapp then went to the office of Sgt. Putz, his supervisor, who had summoned him during his absence.  The two began a heated discussion regarding Crapp's whereabouts that morning, culminating in Sgt. Putz formally ordering Crapp to account for his whereabouts.  According to Crapp, after he requested that Sgt. Putz reduce his order to writing, Sgt. Putz struck Crapp across the hand and forearm with his hand or a bundle of papers.

incident.[3]  Richard Barreto, the City's Chief of Police, recommended that Crapp be fired.  Chief Barreto then held a pre-determination hearing during which Crapp was given an opportunity to present evidence why he should not be terminated.  After investigating Crapp's evidence, Chief Barreto again concluded that Crapp was lying, and subsequently fired him.  Crapp appealed his termination to the City's Personnel Board.  Counsel represented Crapp at the hearing and called witnesses on his behalf.  The Personnel Board upheld Chief Barreto's decision.

Crapp filed suit against the City in federal court, alleging that his termination was racially motivated in violation of Title VII, 42 U.S.C. §§ 2000e *et seq.* (1997).[4]  Crapp claimed that similarly situated non-minority police officers were not terminated for similar disciplinary problems.  The jury found for Crapp and awarded him $150,000 in compensatory damages.  In a Final Order dated July 28, 1999, the district court entered judgment in favor of Crapp and awarded him backpay and reinstatement.  The court stayed reinstatement, however, pending a decision by the Florida Department of Law Enforcement ("FDLE") regarding

[3]The Internal Affairs investigation concluded that Crapp had not informed his supervisor that he needed to return home to retrieve his weapon, had been insubordinate to Sgt. Putz during the meeting, and had exaggerated the incident in his complaint to Internal Affairs.

[4]Crapp also brought a hostile work environment claim under Title VII and a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 1201, *et seq.* (1997).  The district court granted summary judgment to the City on those claims, and Crapp has not appealed them.

whether Crapp would be decertified as a police officer.[5]  The district court

subsequently denied the City's Renewed Motion for Judgment as a Matter of Law,

and the City filed its first notice of appeal (No. 99-13492).

The FDLE suspended Crapp's certification for two years effective from the

date of his termination.  The City then moved for relief pursuant to Rule 60(b),

asking the court to set aside the judgment or order a new trial.  Although the

district court denied the motion, it vacated the award of backpay and reinstatement.

The court reasoned that under McKennon v. Nashville Banner Publ'g Co., 513

U.S. 352 (1995), Crapp was not entitled to backpay or reinstatement because he

was no longer certified to be a police officer.  The court entered an Amended Final

Judgment on January 25, 2000,[6] pursuant to which the City filed its second notice

of appeal (No. 00-10643).[7]

---

[5]Pursuant to Fla. Stat. § 093.1395(5), the City notified the FDLE of the results of its Internal Affairs investigation.  After an administrative hearing before an Administrative Law Judge ("ALJ") at which Crapp was represented by counsel, the ALJ concluded that Crapp had lied in his complaint to Internal Affairs and during the subsequent investigation.  The ALJ further recommended that Crapp be decertified for conduct unbecoming an officer.  On November 19, 1999, following another hearing to review the ALJ's report and recommendation, the Criminal Justice Standards and Training Commission of the FDLE unanimously accepted the ALJ's findings of fact and suspended Crapp's certification for two years, effective from the date of his termination.

[6]In a subsequent order dated February 9, 2000, the district court directed that the Amended Final Judgment be entered nunc pro tunc to the date of the original judgment.

[7]Along with its second notice of appeal, the City filed a Notice of Suggestion of Lack of Jurisdiction regarding the first notice of appeal.  The City argues that its first notice of appeal was premature because there was no final judgment until the district court entered its Amended

4

## II.  Discussion

### A.  The City's Rule 60(b) Motion

We review the denial of a Rule 60(b) motion for abuse of discretion.  <u>See</u>

<u>United States v. Certain Real Property Located at Route 1, Bryant, Ala.</u>, 126 F.3d

1314, 1318 (11th Cir. 1997).  The City argues that because the FDLE made its

suspension of Crapp retroactive to the date of Crapp's termination, Crapp cannot

establish a <u>prima facie</u> case of discrimination.  We conclude that the district court

properly accounted for Crapp's suspension by amending the judgment to preclude

backpay and reinstatement.

The City argues that it is entitled to judgment in its favor or, in the

alternative, a new trial, under two provisions of Rule 60(b).  Rule 60(b)(2)

provides that a party may seek relief because of "newly discovered evidence which

by due diligence could not have been discovered in time to move for a new trial

under Rule 59(b)."  Under Rule 60(b)(6), a court may grant relief for "any other

reason justifying relief from the operation of judgment."  "[R]elief under this

clause is an extraordinary remedy which may be invoked only upon a showing of

---

Final Judgment on January 25, 2000.  Even if the first notice of appeal was premature, this court has jurisdiction over the entire case by virtue of the second notice of Appeal and the order consolidating the two appeals.  <u>See</u> <u>United States v. Olavarrieta</u>, 812 F.2d 640, 642-643 (11th Cir. 1987) (holding that a second notice of appeal filed after a final judgment vested the court with jurisdiction over the entire underlying judgment.)

exceptional circumstances." Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984) (citations omitted).

The City contends that the FDLE's retroactive suspension of Crapp's certification vitiated his ability to make out a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case of racial discrimination, a plaintiff must show that: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). The City argues that the FDLE's decision to retroactively suspend Crapp's certification prevented Crapp from showing that he was qualified to be employed as a police officer.

Even assuming that the requirements of either Rule 60(b)(2) or 60(b)(6) have been met,[8] we are unpersuaded that the FDLE's decision affected Crapp's ability to establish a prima facie case of discrimination. The burden shifting scheme articulated in McDonald Douglas is designed to "bring the litigants and the

_____

[8]The parties dispute whether the FDLE's decision qualifies as "newly discovered evidence" under 60(b)(2) and whether the report is an "exceptional circumstance" under 60(b)(6). Because we conclude that the FDLE's decision did not affect Crapp's ability to establish a prima facie case of discrimination, we need not decide whether the FDLE decision satisfies the requirements of either 60(b)(2) or 60(b)(6).

6

court expeditiously and fairly to the ultimate question [of discrimination]," and the prima facie requirement "is not an onerous one." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). We have recognized that in termination cases, the question of whether the plaintiff was qualified to do the job is not often at issue. "[I]n cases where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred." Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1495 n.2 (11th Cir. 1987). Thus, "allegations of poor performance against plaintiffs discharged from long-held positions may be properly considered . . . when a court evaluates the pretextual nature of an employer's proffered nondiscriminatory reasons for termination." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1360 (11th Cir. 1999), cert. denied, __ U.S. __, 120 S. Ct. 1962 (2000).

    In this case, the FDLE's decision to suspend Crapp's certification–even though made retroactive to the date of his termination–does not prevent Crapp from establishing his prima facie case. Because the FDLE did not make the decision to suspend Crapp's certification until after his termination, it cannot serve as a legitimate, nondiscriminatory reason for Crapp's termination; nor does it

change the fact that at the time of the alleged discriminatory treatment, Crapp was certified to be police officer, and was therefore qualified for his job.

Furthermore, the FDLE's decision was only made retroactive to November 26, 1996–the effective date of Crapp's termination–not October 11, 1996, when Chief Barreto decided to fire Crapp. Therefore, even accepting the City's argument that the FDLE's determination should be given retroactive effect, the FDLE's decision does not vitiate Crapp's prima facie case because Crapp was certified to be a police officer when Chief Barreto made the decision to fire Crapp.

After learning of the FDLE's decision, the district court vacated its award of backpay and reinstatement without vacating the compensatory damage award. In doing so, the court appropriately recognized that the City could have fired Crapp for a lawful reason–lack of certification–on the same day that it fired him for a discriminatory reason. We conclude that the district court properly took account of the FDLE's decision as "after-acquired evidence" under McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995).

In McKennon, the employer conceded that it had discriminated against the plaintiff, but argued that its after-acquired evidence justified the termination. The Supreme Court rejected this argument, holding that after-acquired evidence should not be used to determine liability because "[t]he employer could not have been

8

motivated by the knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." Id. at 360. Rather, the Court held that after-acquired evidence should be used in fashioning the remedy: neither reinstatement nor frontpay generally is appropriate, and backpay should be limited to the point when the employer discovered the after-acquired evidence. Id. at 361-62.

The City argues that it is inconsistent to deny Crapp backpay for a discriminatory termination and yet award him compensatory damages for that termination. The district court's action, however, is consistent with the treatment of after-acquired evidence under McKennon. The district court vacated its award of backpay and reinstatement because the FDLE's decision precluded the City from retaining Crapp as a police officer. The FDLE's decision does not, however, change the fact that the jury concluded that the City's decision to fire Crapp was a racially motivated adverse employment action for which Crapp should be compensated. The district court's Amended Final Judgment complies with the Supreme Court's statement in McKennon that "[r]esolution of the [problem of after-acquired evidence] must give proper recognition to the fact that [unlawful discrimination] has occurred which must be deterred and compensated without undue infringement upon the employer's rights and prerogatives." Id. at 362.

Denying Crapp any damages in this case would neither compensate him for the discrimination he suffered nor deter the City from future acts of discrimination.

B.  The Decision of the City's Personnel Board

After his termination, Crapp appealed to the City's Personnel Board. Following a hearing at which Crapp was represented by counsel, the Personnel Board found that Crapp had engaged in conduct unbecoming an officer.  The City argues that the district court erred by not instructing the jury on the preclusive effect of the Personnel Board's findings.  This court applies a deferential standard of review to a trial court's jury instructions:   If the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording of the instructions.  See Eskra v. Provident Life & Accident Ins. Co., 125 F.3d 1406, 1415 (11th Cir. 1997).

In Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999), this court held that a "state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal court proceeding if: (1) the courts of that state would be bound by the decision; and (2) the state proceedings that produced the decision comported with the requirements of due process."  Unlike this case, however, Manciccia, dealt with the preclusive effect to be given state judicial proceedings.  Id.

In <u>University of Tennessee v. Elliott</u>, 478 U.S. 788 (1986), the Supreme Court distinguished between claims under Title VII and claims under § 1983 in determining whether unreviewed state administrative decisions should be given preclusive effect. In <u>Elliott</u>, a University of Tennessee employee, fearing that he would be fired for misconduct, requested a hearing under the Tennessee Uniform Administrative Procedures Act. <u>Id.</u> at 790. Following an administrative hearing, a university official acting as an ALJ concluded that the plaintiff had engaged in acts of misconduct and that the charges against him were not racially motivated. <u>Id.</u> at 791. Rather than seeking review of this decision in the state courts, the plaintiff decided to pursue claims under Title VII and § 1983 in federal district court. <u>Id.</u> at 792. After noting that 28 U.S.C. § 1738, which requires federal courts to give preclusive effect to decisions of state courts, does not apply to unreviewed state administrative decisions, the Court considered whether general rules of preclusion applied to the plaintiff's claims. <u>Id.</u> at 794.

With respect to the § 1983 claims, the Court held that the state administrative agency's findings should be given preclusive effect. <u>Id.</u> at 799. The Court noted that "[w]e . . . see no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the

11

burgeoning use of administrative adjudication in the 20th century." Id. at 797. Accordingly, the factual findings of a state administrative agency must be given preclusive effect in § 1983 proceedings. Id. at 799.

The Court reached a different result, however, with respect to the plaintiff's Title VII claims. Title VII requires the EEOC to give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law." 42 U.S.C. § 2000e-5(b). The Court noted that "it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." Id. Therefore, the Court concluded that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." Id. at 796.

Applying Elliott, other circuits have held that unreviewed state agency decisions are not entitled to any preclusive effect in Title VII cases. See Rao v. County of Fairfax, Va., 108 F.3d 42, 45 (4th Cir. 1997); Roth v. Koppers Indus., Inc., 993 F.2d 1058, 1060-63 (3d Cir. 1993); McInnes v. California, 943 F.2d 1088, 1093-94 (9th Cir. 1991); DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 114-15 (2d Cir. 1987); Duggan v. Board of Educ., 818 F.2d 1291, 1293-95 (7th Cir.1987); Abramson v. Council Bluffs Cmty. Sch. Dist., 808 F.2d

12

1307, 1308-09 (8th Cir.1987).  In <u>McInnes</u>, the Ninth Circuit explained "[t]he clear teaching of <u>Elliott</u> is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court. . . . In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them."  943 F.2d at 1093-94.  Accordingly, we conclude that the district court did not err by refusing to instruct the jury that the Personnel Board's findings of fact should be given preclusive effect.

C.   Other Issues

The City makes two final arguments.  First, the City argues that the district court should have granted its motion for judgment as a matter of law because Crapp had not shown that similarly situated non-minority officers were treated differently.  Second, the City argues that it was prejudiced by certain comments made by Crapp's counsel.  After a thorough review of the record, we conclude that these arguments are without merit.

IV.   Conclusion

Based on the foregoing reasons, we AFFIRM the final judgment of the district court.  In addition, Appellee's motion for attorney's fees and costs on

13

appeal is GRANTED as to entitlement, and that matter is REMANDED to the district court for a determination of amount.

AFFIRMED and REMANDED.