**Carol V. ROTH, Appellant,**

v.

**KOPPERS INDUSTRIES, INC.**

No. 92–3379.

United States Court of Appeals, Third Circuit.

Argued Feb. 23, 1993.

Decided May 24, 1993.

Joseph J. Chester (argued), Caplan & Chester, Pittsburgh, PA, for appellant.

Carl H. Hellerstedt, Jr. (argued), Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, Pittsburgh, PA, for appellee.

Before: SLOVITER, Chief Judge, MANSMANN and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

In this case, we must determine whether the findings of the Pennsylvania Unemployment Compensation Board of Review (the Board), when unreviewed by a Pennsylvania court, may be afforded collateral estoppel effect in a subsequent action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988 & Supp. III 1992). Following the clear teachings of *Uni-*

---

**11.** We are not by our procedural disposition implying that there would have been merit to the claim. *See United States v. Verdugo–Urquidez,* 494 U.S. 259, 266, 110 S.Ct. 1056, 1061, 108 L.Ed.2d 222 (1990).

*versity of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), we hold that such findings may not be given issue preclusive effect in a subsequent Title VII action. We will therefore affirm the order of the district court.

## I.

### FACTS AND PROCEDURAL HISTORY

Plaintiff Carol V. Roth was employed from 1951 to 1954 and thereafter from 1974 to 1989 as a secretary, a stenographer, a roof bond coordinator, and a roof guarantee administrator by defendant Koppers Industries, Inc., and/or its predecessor companies.

Both before and after the Koppers acquisition, Roth alleged that her coworkers subjected her to harassment and discriminatory treatment on the basis of her sex. After several such alleged incidents, Roth chose not to return to work after March 28, 1989. On April 5, 1989 Roth met with Koppers' Vice President, Earl Clendaniel, regarding her allegations. Clendaniel urged Roth to return to work, informing her that although he could not control the personal feelings of the other workers, harassment and discrimination would not be tolerated. He also stated that he would investigate Roth's complaints. Roth did not return to work, however, and Koppers treated her decision as a voluntary resignation. April 5, 1989 was Roth's last day as a Koppers employee.

On April 23, 1989, Roth applied for unemployment compensation benefits from the Pennsylvania Office of Employment Security. A representative of that office denied Roth's claim for benefits and she appealed. On June 2, 1989, a referee from the Unemployment Compensation Board of Review held a hearing to determine whether Roth was entitled to benefits. Only Roth appeared; Koppers did not send a representative to the hearing. The referee concluded that Roth had voluntarily resigned her employment and was ineligible for benefits.

Roth appealed to the Board, which on August 16, 1989 reversed the referee's decision without receiving additional evidence. The Board found that "during her employment [Roth] was subjected to discrimination and harassment," App. at 431, although it did not indicate whether the discrimination and harassment were based on Roth's sex or on some other ground. The Board also concluded that because Koppers "gave claimant the option of resigning or to continue under the current conditions[, Roth] resigned for necessitous and compelling reasons and is eligible for benefits under Section 402(b) of the [Unemployment Compensation] Law."[1] App. at 431. Although Koppers could have appealed the Board's decision to the Commonwealth Court, *see LeGare v. Com., Unemployment Compensation Bd. of Review,* 498 Pa. 72, 444 A.2d 1151, 1152–53 (1982); *Taylor v. Unemployment Compensation Bd. of Review,* 474 Pa. 351, 378 A.2d 829, 831–32 (1977), it failed to do so.

Roth then filed a complaint in federal district court alleging violations of Title VII, 42 U.S.C. § 2000e–2(a) (1988), and the Equal Pay Act, 29 U.S.C. § 206(d)(1) (1988). Roth's Title VII claim was based on a hostile work environment theory, *see Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir. 1990), and a constructive discharge theory, *see Goss v. Exxon Office Sys. Co.,* 747 F.2d 885 (3d Cir.1984).[2] The district court, after a three-day bench trial, concluded that Roth had failed to establish a prima facie case under either statute, and entered judgment for Koppers.

With respect to Roth's claim of gender discrimination, the court made extensive findings of fact and conclusions of law. In particular, the court concluded that "[m]ost of plaintiff's examples of discriminatory acts appear to the court to be unrelated to sex. Instead, they appear to be the result of frustrations and difficulties to be expected when a company undergoes the type of ad-

---

1. That section provides in part that an employee is ineligible for compensation if "his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 Pa.Cons.Stat.Ann. § 802(b) (Purdon 1991).

2. The district court concluded that the Civil Rights Act of 1991 did not apply to Roth's Title VII claims. As Roth has failed to object to that ruling, we will not consider it on appeal.

justments [Koppers] experienced following its transition from [its predecessor companies] in December, 1988." Dist.Ct.Op. at 15. With regard to the Equal Pay Act claim, the court concluded that Roth had failed to meet her burden of proving that "anyone of the opposite sex was performing equal work" to that which she performed for Koppers. *Id.* at 18.

The district court also rejected Roth's argument that it was bound by the Board's conclusion that she had resigned her employment for a necessitous and compelling reason:

> [The Board's] decision ... cannot be accorded preclusive effect in this action because all of the requirements for collateral estoppel have not been met. Specifically, the issue before the [Board] ... was whether plaintiff left her employment for necessitous and compelling reasons. The issues before this court specifically involve questions of sex discrimination under Title VII and violations of the Equal Pay Act. Because the issue decided in the previous adjudication is not identical to the issues presented here, collateral estoppel is not appropriate. *See, e.g., Kelley v. TYK Refractories Co.,* 860 F.2d 1188, 1194 (3d Cir. 1988).

Dist.Ct.Op. at 12.

Roth filed a timely and proper notice of appeal from the district court's order of June 19, 1992. We have jurisdiction under 28 U.S.C. § 1291 (1988).

## II.

### *DISCUSSION*

#### A.

##### *Plaintiff's Contention*

On appeal, Roth raises only a single issue. She claims that the district court erred in refusing to accord collateral estoppel effect to the Board's findings that she resigned for necessitous and compelling reasons and that she was subjected to harassment and discrimination. Roth argues that the Board's findings compelled the district court to rule in her favor on her Title VII claim.

As support for this argument, Roth cites *Frederick v. American Hardware Supply Co.,* 384 Pa.Super. 72, 557 A.2d 779, *appeal denied,* 523 Pa. 636, 565 A.2d 445 (1989), in which the Pennsylvania Superior Court held that a finding by the Board that certain employees had engaged in "willful misconduct" collaterally estopped the employees from asserting in a subsequent state court action that they had been wrongfully discharged. *Id.* at 781. Roth asserts that, in light of *Frederick,* our prior decision in *Kelley v. TYK Refractories Co.,* 860 F.2d 1188 (3d Cir.1988), inaccurately predicted the issue preclusive effect that Pennsylvania courts would accord the Board's findings.

In *Kelley,* we rejected the defendant's assertion that a plaintiff bringing a claim of race discrimination against his employer under 42 U.S.C. § 1981 (1988 & Supp. III 1992) was precluded "from litigating the issue of the nature of his employment termination in the context of his race discrimination claim" by a prior Board finding that he had voluntarily resigned. 860 F.2d at 1194. Rather, we concluded that "[b]ecause the issue of discharge as it arises under § 1981 is not identical to the issue in the context of the Pennsylvania Unemployment Compensation Law, we cannot say that it was actually determined before the referee and the Board." *Id.* at 1196. We also noted that because the two statutes "embod[y] different rights and involve[ ] different public policies," the Pennsylvania Supreme Court would decline to give issue preclusive effect to the Board's finding. *Id.* at 1195.

Although Roth argues that we should overrule *Kelley* in light of *Frederick,* we need not address this issue. Rather, we conclude that Roth's collateral estoppel argument must be rejected in light of the Supreme Court's decision in *University of Tennessee v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).

#### B.

##### *Collateral Estoppel and Title VII*

In determining the preclusive effect of state judicial or administrative proceedings on subsequent federal court action, we look

first to 28 U.S.C. § 1738 (1988), which extends to federal courts the principles embodied in the full faith and credit clause of the United States Constitution. As the Supreme Court explained in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), in enacting section 1738, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so...." *Id.* at 96, 101 S.Ct. at 415.

In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court considered whether "a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim as meritless when the state court's decision would be res judicata in the State's own courts." *Id.* at 463, 102 S.Ct. at 1888. The Court concluded that there was no "affirmative showing of a clear and manifest legislative purpose in Title VII to deny res judicata or collateral estoppel effect to a state court judgment affirming that a claim of employment discrimination is unproved...." *Id.* at 485, 102 S.Ct. at 1899 (quotations omitted).

In a key footnote, however, the Court stated that a state's preclusion rules would not apply to unreviewed administrative findings by state agencies:

> EEOC review of discrimination charges previously rejected by state agencies would be pointless if the federal courts were bound by such agency decisions. Nor is it plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts.

*Id.* at 470 n. 7, 102 S.Ct. at 1891 n. 7 (citations omitted).

The Court expanded on this footnote in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). In that case, a black University employee threatened with discharge for inadequate work performance and misconduct on the job sought a hearing pursuant to the Tennessee Uniform Administrative Procedures Act. Prior to the start of the hearing, the employee filed an action in federal court alleging that his proposed discharge was racially motivated and seeking relief under Title VII, 42 U.S.C. § 1983 (1988), and other civil rights statutes. The district court initially entered a temporary restraining order prohibiting the University from discharging the employee, but later lifted the order and permitted the administrative hearing to proceed.

A University administrative assistant, acting as an ALJ under state law, found that the University's charges against the employee were not motivated by racial animus. However, he also concluded that the proposed discharge was too severe a penalty and accordingly ordered the employee to be transferred to a new work assignment with new supervisors. The employee appealed this decision to a University vice president, who affirmed the ALJ's ruling. Rather than seeking further review in the Tennessee courts, the employee returned to federal court to pursue his civil rights claims. *Id.* at 792, 106 S.Ct. at 3222.

In evaluating the University's argument that the ALJ's finding against the employee precluded his claims under Title VII and 42 U.S.C. § 1983, the Court first noted that although 28 U.S.C. § 1738 governs the preclusive effect to be given to the judgments of state courts, it is "not applicable to the unreviewed state administrative factfinding at issue in this case." 478 U.S. at 794, 106 S.Ct. at 3223. However, the Court then considered whether it could fashion a federal common law rule of preclusion for the employee's civil rights claims.

With respect to section 1983, the Court examined congressional intent and the policies underlying common law rules of preclusion, and concluded that unreviewed administrative factfindings should be given preclusive effect in subsequent section 1983 actions.

*Id.* at 797–99, 106 S.Ct. at 3225–27.[3] However, the Court reached precisely the opposite conclusion with regard to Title VII.

The Court first examined the statute itself, noting that the EEOC, in investigating discrimination charges, must give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law." 42 U.S.C. § 2000e-5(b) (1988 & Supp. III 1992). "[I]t would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Elliott,* 478 U.S. at 795, 106 S.Ct. at 3224.

The Court also stated that its prior decision in *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), holding that a federal employee whose discrimination claim was rejected by her employing agency was entitled to a trial *de novo* in federal court on her Title VII claim, strongly weighed against preclusion. "Like the plaintiff in *Chandler,* the respondent in this case pursued his Title VII action following an administrative proceeding at which the employing agency rejected a discrimination claim. It would be contrary to the rationale of *Chandler* to apply res judicata to deny respondent a trial *de novo* on his Title VII claim." *Id.* at 796, 106 S.Ct. at 3224. Thus, the Court wrote: "On the basis of our analysis ... of the language and legislative history of Title VII, we conclude that ... Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Id.*

Following *Elliott,* the courts of appeals have unanimously concluded that unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII proceedings. As the Ninth Circuit recently stated:

> The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court. Under either of

those circumstances, 28 U.S.C. § 1738 applies by its own terms. In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them. Section 1738 does not apply to such determinations, and the Court in *Elliott* refused to fashion a federal common-law rule of preclusion in the Title VII context.

*McInnes v. California,* 943 F.2d 1088, 1093–94 (9th Cir.1991); *see also DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111, 114–15 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Duggan v. Board of Educ.,* 818 F.2d 1291, 1293 (7th Cir.1987); *Abramson v. Council Bluffs Community School Dist.,* 808 F.2d 1307, 1308–09 (8th Cir.1987).

Although all of these cases concerned Title VII actions in which the defending employer attempted to rely on a prior state administrative determination adverse to a Title VII plaintiff, at least three district courts have held that *Elliott* bars an offensive use of collateral estoppel in a Title VII action by an employee who had previously filed a successful claim for unemployment compensation benefits. *See Gallo v. John Powell Chevrolet, Inc.,* 765 F.Supp. 198, 207–08 (M.D.Pa. 1991); *Johnson v. Halls Merchandising, Inc.,* 49 Fair Empl.Prac.Cas. (BNA) 527, 528, 1989 WL 23201, at *2 (W.D.Mo.1989); *Caras v. Family First Credit Union,* 688 F.Supp. 586, 589 (D.Utah 1988).

We agree with these courts that *Elliott* applies with equal force when a Title VII plaintiff attempts to assert collateral estoppel on the basis of a favorable factfinding in an unreviewed state administrative proceeding. The Court in *Elliott* did not articulate any distinction between a defensive and an offensive use of collateral estoppel; rather, it stated broadly that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." 478 U.S. at 796, 106 S.Ct. at 3225. In addi-

---

**3.** Specifically, the Court held that "when a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's

factfinding the same preclusive effect to which it would be entitled in the State's courts." *Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226 (quotation and citation omitted).

tion, the Court's analysis of the plain meaning of the statute, as reinforced by the legislative history and prior Supreme Court precedent, is equally applicable to an attempt to use issue preclusion affirmatively. Thus, we conclude that the district court properly refused to accord issue preclusive effect to the Board's factfindings, although we base our holding on a different ground than that relied on by the district court.

## III.

### *CONCLUSION*

For the foregoing reasons, we will affirm the order of the district court.