Lalit K. CHUGH, Plaintiff,

v.

**WESTERN INVENTORY SERVICES, INC., Defendant.**

Civil Action No. 03CV4466.

United States District Court, D. New Jersey.

July 9, 2004.

288

Fred Shahrooz Scampato, Law Office of Fred Shahrooz Scampato Westfield, NJ, for Plaintiff.

Shea H. Lukacsko, Lynelle J. Slivinski, Grotta, Glassman & Hoffman, P.A., Roseland, NJ, for Defendant.

## OPINION & ORDER

LINARES, District Judge.

Presently before this Court is a motion to dismiss filed by the Defendant Western Industry Services ("Western") pursuant to Fed.R.Civ.P. 12(b)(6). The motion seeks dismissal of Plaintiff Lalit K. Chugh's suit against Western alleging work-related discrimination. This motion is resolved without oral argument pursuant to Fed. R.Civ.P. 78. For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

BACKGROUND

Plaintiff Chugh, a citizen of the United States and a resident of the State of New Jersey, was hired by Defendant Western as an Inventory Clerk on October 18, 1993. (Compl. ¶ 6). Plaintiff was discharged by Defendant on January 8, 2001. Plaintiff alleges that he was discharged in retaliation because on July 5, 2000, he complained to the Defendant that he was being sexually harassed by a female co-worker. (Compl. ¶ 8–10). Seeking redress for unlawful discharge and discrimination, Plaintiff filed a verified complaint against the Defendant with the New Jersey Department of Law & Public Safety, Division of Civil Rights (hereinafter "DCR"). The DCR notified the Plaintiff by letter that it had conducted an investigation and concluded that there were "not sufficient facts to credit the allegations of the complaint." (Def.Mot., Ex. A). The DCR letter also included an order finding no probable cause, a summary of the DCR investigation, and advised the Plaintiff of his right to request a review by the Equal Employment Opportunity Commission (EEOC). (Def.Mot., Ex. A). Plaintiff did not seek review by the EEOC, nor did Plaintiff seek out his right to appeal to the New Jersey Superior Court, Appellate Division.

On September 19, 2003, Plaintiff filed the instant action, alleging in a single count, violations of the "Civil Rights Act of 1866, 42 U.S.C. § 1981; Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq.; and the New Jersey Law Against Discrimination ('NJLAD'), N.J.S.A. § 10:5–1, et. seq.," and seeking compensatory damages, punitive damages, and attorney's fees. On December 24, 2003, pursuant to Fed.R.Civ.P.12(b), Defendant filed a motion to dismiss on all claims. In its supporting brief, Defendant argues (1) that Plaintiff's NJLAD claim is barred because Plaintiff elected an administrative

remedy by filing a complaint with the DCR, (2) that Plaintiff's Title VII claim is precluded by the DCR's finding of no probable cause, and (3) that Plaintiff's 42 U.S.C. § 1981 claim is barred by New Jersey's two-year statute of limitations governing personal injury. The Court will address each of these issues in turn.

## DISCUSSION

### I. *Standard of Review*

■ A pleading may be dismissed for "failure to state a claim where it appears beyond doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." *Hedenburg v. Bando American, Inc.*, 1992 WL 443432, at *4 (D.N.J. Mar.3, 1992) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Unger v. Nat'l Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). Courts are required when conducting the 12(b)(6) inquiry to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir.2002). Nevertheless, legal conclusions made in the guise of factual allegations are not given the presumption of truthfulness. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Haase v. Webster*, 807 F.2d 208, 215 (D.C.Cir.1986); *Briscoe v. La Hue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Western Mining Council v. Watt*, 643 F.2d 618, 626 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Dismissal is only appropriate when it appears beyond doubt that the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

■ Although in their supporting briefs the parties make reference to both Fed.R.Civ.P 12(b)(6) and Fed.R.Civ.P 56, this Court believes that treating this motion under Fed.R.Civ.P. 12(b)(6) is more appropriate. Fed.R.Civ.P. 12(b) provides that on a 12(b)(6) motion, if matters outside the pleadings are presented and not excluded by the court, the motion shall be converted to one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *See e.g., In re Rockefeller Ctr. Prop.*, 184 F.3d at 287. However, in the Third Circuit, such conversion is at the discretion of the court where the matters outside the pleadings consist only of: (1) matters attached to the complaint; (2) matters incorporated into the pleadings by reference; (3) matters of public record; and (4) matters integral to or upon which plaintiff's claim is based. *In re Bayside Prison Litig.*, 190 F.Supp.2d 755 (D.N.J.2002) (citations omitted).

■ Attached to the Defendant's notice of motion to dismiss are various supporting affidavits, the DCR's final order, and a summary of the DCR's investigation. These matters are both "incorporated into the pleadings by reference," and "integral to or upon which plaintiff's claim is based." Therefore, it is permissible for this Court to refrain from converting to a Fed.R.Civ.P. 56 motion. Consequently, as discovery has not yet commenced and no prejudice will occur otherwise, this Court will exercise its discretion and limit its consideration to the Plaintiff's claims in light of Defendant's 12(b)(6) motion to dismiss.

290

## II. *Plaintiff's NJLAD Claim*

The NJLAD provides redress for individuals who are the victims of discrimination. *See Hedenburg,* 1992 WL 443432 at *7. NJLAD aims to accomplish this goal by offering victims an administrative process as an alternative to filing a claim in New Jersey state courts. The NJLAD contains an "election of remedies" provision which bars an individual from bringing a judicial action while a DCR investigation on the same claim is pending or after the DCR has rendered a final determination. Specifically, this provision states:

> [T]he procedure herein provided [under the NJLAD] shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned.

N.J.S.A § 10:5–27.

 The election of remedies provision "basically seeks to prevent parties from having 'a second bite of the apple' by pursuing the alternative route to relief. . . . It seeks to prevent duplication of efforts and forum shopping." *Wilson v. Wal-Mart Stores,* 158 N.J. 263, 271, 729 A.2d 1006 (1999) (citing *Ferrara v. Tappan Co.,* 722 F.Supp. 1204, 1205 (D.N.J.1989)). Therefore, with the exception of appellate review, an individual who has received a final determination by the DCR will be barred by N.J.S.A. § 10:5–27 from bringing any other action, in any forum, based on the same injury. *See e.g., Tummala v. Merck & Co.,* 1995 WL 669220, at *11–12 (D.N.J. Nov.9, 1995); *Harter v. GAF,* 150 F.R.D. 502, 513 (D.N.J.1993); *Hedenburg,* 1992 WL 443432 at *7; *Pittman v. LaFontaine,* 756 F.Supp. 834, 842 (D.N.J.1991); *Ferrara,* 722 F.Supp. 1204, 1205 (D.N.J. 1989); *Hermann v. Fairleigh Dickinson Univ.,* 183 N.J.Super. 500, 503, 444 A.2d 614 (App.Div.1982).

In *Tummala,* the court considered an NJLAD claim brought in federal court. The plaintiff in Tummala had filed a complaint with the DCR and the DCR issued a final determination of no probable cause. Instead of seeking review of the DCR determination at the state appellate level, the plaintiff thereafter filed the same NJLAD claim in the state trial court. In dismissing the plaintiff's NJLAD claim the trial court stated:

> [B]ecause [Tummala] chose to pursue the swifter and less expensive administrative route . . . and because he never pursued his appeal from the DCR to the Appellate Division, he elected an administrative remedy and is prohibited by N.J.S.A. § 10:5–27 from asserting related state law claims in an independent court judicial action, including pendant [sic] claims in this action.

*Tummala,* 1995 WL 669220 at *12 (quoting *Harter,* 150 F.R.D. at 513).

 The relevant facts of the case at bar are indistinguishable from those in *Tummala*—Plaintiff Chugh elected an administrative remedy by filing with the DCR, received a final determination, and has not sought appellate review. "Accordingly, because the courts of New Jersey would bar [Plaintiff Chugh's] state law claim under the election of remedies provision, based on his initiation of state administrative proceedings and on his voluntary decision of not to pursue an appeal of the DCR's finding of no probable cause to the Appellate Division, [Plaintiff Chugh] is not entitled to pursue those state law claims in this court." *Tummala,* 1995 WL 669220 at *12. For this Court to permit the Plaintiff's NJLAD claim to proceed would contravene the purpose of the election of remedies provision which seeks to make administrative redress exclusive once chosen. Consistent with this purpose, a litany of federal court decisions have barred a

plaintiff's subsequent state and federal claims under N.J.S.A. § 10:5–27 after a DCR final determination. *See e.g., Harter,* 150 F.R.D. at 513 (applying N.J.S.A. § 10:5–27 to bar an ADEA claim brought in federal district court); *Hedenburg,* 1992 WL 443432 at *8–9 (applying N.J.S.A. § 10:5–27 to bar a Title VII claim brought in federal district court); *Ferrara,* 722 F.Supp. at 1205 (applying N.J.S.A. § 10:5–27 to bar an age discrimination claim under NJLAD brought in federal district court). The Court agrees with and defers to the ample precedent interpreting the clear statutory language of N.J.S.A. § 10:5–27, and Plaintiff's NJLAD claim is hereby dismissed with prejudice.

### III. *Plaintiff's Title VII Claim*

 Defendant Western contends that Plaintiff's Title VII (42 U.S.C. § 2000e, *et. seq.*) claim is barred because of 28 U.S.C. § 1738, which provides in pertinent part:

> The records and *judicial proceedings* of any court of any … State, Territory, or Possession [of the United States], or copies thereof, shall be provided or admitted in other courts within the United States … [and] shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken.

28 U.S.C. § 1738 (emphasis added). This statute codifies the preclusive effect that federal courts are to give to state court judgments—if state law would require a state court to accord the prior judgment preclusive effect, a federal court must give similar deference to the prior judgment. Accordingly, federal courts must examine state statutory means of preclusion as well as state common law means of preclusion. Defendant argues that according to 28 U.S.C. § 1738, this Court should defer to N.J.S.A. § 10:5–27 and give preclusive effect to the DCR's final determination of no probable cause.

 In *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the United States Supreme Court stated that 28 U.S.C. § 1738, "which governs the preclusive effect to be given the judgments and records of state courts … is not applicable to [an] *unreviewed* state administrative [finding]." *Elliott,* 478 U.S. at 794, 106 S.Ct. 3220 (citing *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)) (emphasis added). Accordingly, Defendant's argument is conditioned upon the belief that the DCR's determination has been "reviewed," and therefore that the preclusion of Plaintiff Chugh's claim is consistent with *Elliott.*[1] As set forth below, this Court finds that the DCR's determination constitutes an "unreviewed"

---

1. In their pleadings, both parties allude to "preclusion" generally but do not specify as to whether claim or issue preclusion is being asserted. The doctrine of claim preclusion will only bar a claim that *could have been* brought in a prior proceeding but was not. Plaintiff Chugh could not have brought his Title VII claim before the DCR proceeding because the DCR only administers LAD claims. Therefore, claim preclusion is not properly applied in the instant case. However, "because this case involves the potential relitigation of a discrimination claim, *issue preclusion* is operative." *Hedenburg,* 1992 WL 443432 at *12 n. 8 (emphasis added). In any event, because the governing *Elliott* case does not distinguish between the two forms of preclusion, this Court has no reason to believe that its analysis should differ depending on whether issue or claim preclusion is asserted. *See Roth v. Koppers Industries, Inc.,* 993 F.2d 1058, 1062 (3d Cir.1993) ("The Court in *Elliott* did not articulate any distinction … rather, it stated broadly that 'Congress did not intend unreviewed state administrative proceeding to have preclusive effect on Title VII claims.' ")

agency determination and as a result the Plaintiff's Title VII claim is not precluded.

*Elliott* involved a black university employee who sought an administrative hearing when he was threatened with discharge for inadequate work performance and misconduct. 478 U.S. at 791, 106 S.Ct. 3220. Prior to the commencement of the administrative proceedings, the employee filed a Title VII suit in federal district court against the university upon alleging that his proposed discharge was racially motivated. Rather than staying the administrative proceedings, the court allowed the administrative law judge to render a determination, which resulted in a finding that the employee's discharge was not racially motivated. *Id.* Instead of seeking state court review of the administrative proceedings, the employee returned to the district court and filed a Title VII claim. *Id.* The court granted summary judgment upon ruling that the employee's Title VII claim was precluded by the administrative determination. *Id.* On review, the Supreme Court of the United States held that because 28 U.S.C. § 1738 only contemplates state judicial proceedings and not "unreviewed" agency determinations, neither party could assert preclusion based on the administrative findings. *Id.* at 794, 106 S.Ct. 3220. Therefore, in this case, if the DCR's determination is "unreviewed," it may not be accorded preclusive effect under 28 U.S.C. § 1738.

Plaintiff relies on *Pittman* to support his argument that the DCR determination is an "unreviewed" state agency determination which should not be given preclusive effect over his Title VII claim. In *Pittman*, the plaintiff filed an NJLAD claim with the DCR. The Division subsequently conducted an investigation and issued a finding of no probable cause. *Pittman*, 756 F.Supp. at 838. The plaintiff appealed and the Superior Court of New Jersey, Appel-

late Division affirmed. The plaintiff then filed a suit in federal district court alleging a Title VII violation. In considering the Title VII claim, the *Pittman* court found that the DCR's determination of no probable cause was to be given preclusive effect under 28 U.S.C. § 1738, stating that "Pittman appealed the decision of the DCR, and the decision of the DCR was affirmed in all respects. Thus, the instant [Title VII] case . . . is precluded." *Id.* at 844. Based on *Pittman*, Plaintiff claims that because the DCR determination in the present case was not appealed and affirmed in all respects, it remains "unreviewed" and should not be given preclusive effect over his Title VII claim.

Defendant responds by citing the *Hedenburg* case for the proposition that a DCR's determination may be considered "reviewed" even if it has not been affirmed on appeal. Unlike *Pittman*, the plaintiff in *Hedenburg* withdrew his appeal of the DCR's determination soon after it was filed. As a result, the appellate court did not render a final decision regarding the DCR's determination. *Id.* Although there was no final decision upon appeal, the district court still gave preclusive effect to the DCR determination. *Hedenburg*, 1992 WL 443432 at *10. Accordingly, Defendant Western argues that Plaintiff's NJLAD claim should similarly be given preclusive effect even though there has not been a final decision on appeal.

█ *Pittman* and *Hedenburg* offer two fact-specific situations in which a DCR determination are considered "reviewed." However, as many factual permutations may arise from agency determinations and their subsequent review, a bright-line rule would be difficult if not impossible to draw. Nonetheless, the judicial reasoning set forth in those cases provides sound analytical guidance for this Court. Placed in juxtaposition, the *Pittman* and *Hedenburg*

decisions illustrate that not only will a final decision on appeal render an agency determination "reviewed," but so will some set of circumstances short of a final decision. The facts in the case at bar do not present such a set of circumstances.

In the instant case, the most probative fact on the issue of preclusion is that Plaintiff Chugh did not avail himself of the appellate process. Following the DCR's determination, there has been no subsequent action in connection with a judicial review of the DCR's determination. To characterize such circumstances as "reviewed" would both turn the plain meaning of the phrase on its head and effectively signify that all agency determinations should be considered "reviewed" by the mere fact of their promulgation. To permit such a result would also swallow the rule of *Elliott,* which explicitly recognizes that some agency decisions will remain "unreviewed." Therefore, consistent with *Elliott, Pittman,* and *Hedenburg,* this Court finds that the DCR's determination in the instant case remains "unreviewed," not to be given preclusive effect in a Title VII action by operation of 28 U.S.C. § 1738.

Although 28 U.S.C. § 1738 does not preclude Plaintiff's Title VII claim, it is also possible that it may be precluded by federal common law. This Court again looks to *Elliott,* which recognized that "[the federal courts] have frequently fashioned federal common law rules of preclusion in the absence of a governing statute ... [and] because [28 U.S.C. § 1738] antedates the development of administrative agencies it clearly does not represent that the decisions of state administrative agencies should not be given preclusive effect." 478 U.S. at 794–795, 106 S.Ct. 3220. Nonetheless, the *Elliott* Court expressly declined to fashion a federal common law rule of preclusion for actions brought under Title VII. *Id.* at 795–796, 106 S.Ct. 3220 (noting that the language of 42 U.S.C. § 2000e–5(b), which requires the EEOC to give "substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law," would make little sense if those findings were entitled to preclusive effect). Accordingly, there is no federal common law rule that would give the DCR determination preclusive effect over Plaintiff's Title VII claim.

The Court finds further support for its conclusion in the Third Circuit case of *Roth v. Koppers Indus., Inc.,* 993 F.2d 1058 (3d Cir.1993), which contemplated the application of federal common law to preclude a plaintiff's Title VII claim. *Roth,* the plaintiff-employee, brought a Title VII employment discrimination claim in federal court after the Pennsylvania Unemployment Compensation Board of Review found that the employee was subjected to discrimination and harassment. *Id.* at 1059. The defendant could have appealed the Board's decision to the state court, but she failed to do so. *Id.* The district court concluded that the plaintiff had failed to establish a *prima facie* case under Title VII and entered judgment for the defendant. *Id.* Upon appeal, the plaintiff argued that the district court was compelled to give preclusive effect to the Board's administrative findings. *Id.* at 1060.

The *Roth* court surveyed the relevant jurisprudence arising after *Elliott* and observed that the "courts of appeals have unanimously concluded that unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII proceedings." *Roth,* 993 F.2d at 1062 (citing *McInnes v. California,* 943 F.2d 1088, 1093–1094 (9th Cir.1991); *DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111, 114–15 (2d Cir.1987), *cert.*

*denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395; *Duggan v. Bd. of Educ.,* 818 F.2d 1291, 1293 (7th Cir.1987); *Abramson v. Council Bluffs Cmty. School Dist.,* 808 F.2d 1307, 1308–09 (8th Cir.1987)). Accordingly, the *Roth* court affirmed the dismissal of the district court, but on the grounds that the prior DCR determination was not "reviewed," and therefore could not be accorded preclusive effect in a subsequent Title VII action under federal common law. The *Roth* Court supported its holding by reiterating the reasoning of the Ninth Circuit:

> The clear teaching of *Elliott* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court. Under either of these circumstances, 28 U.S.C. § 1738 applies by its own terms. In contrast, unreviewed administrative determinations lack preclusive effect in a subsequent Title VII action, regardless of any preclusive effect state law might accord to them.

*Id.* at 1062 (quoting *McInnes,* 943 F.2d at 1093–1094).

For all of these reasons, this Court holds that the DCR's determination of no probable cause remains "unreviewed." Therefore, Plaintiff's Title VII claim is not precluded by the prior DCR determination, whether considered under 28 U.S.C. § 1738 or federal common law. Defendant's motion to dismiss with respect to Plaintiff's Title VII claim is denied.

### IV. *Plaintiff's 42 U.S.C. § 1981 Claim*

#### A. *The Limitations Period*

■ 28 U.S.C. § 1658 was enacted to provide a federal "catch-all" statute of limitations for actions arising under federal law after December 1, 1990. *See Jones v. R.R. Donnelley & Sons Co.,* — U.S. —, 124 S.Ct. 1836, — L.Ed.2d — (2004).

This limitations statute provides in pertinent part:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658.

In *Jones,* the United States Supreme Court considered the 42 U.S.C. § 1981 claim of three classes of petitioners who alleged that they were subjected to a racially hostile work environment and wrongfully terminated in connection with the closing of a company plant. *Jones,* 124 S.Ct. at 1839. Upon motion for summary judgment, the respondent alleged that the petitioners' claims were barred by the applicable Illinois two-year statute of limitations for personal injury. *Id.* In response, the petitioners pointed out that 28 U.S.C. § 1658 provides for a four-year statute of limitations. *Id.* The *Jones* Court first noted that § 1658 only applies to federal causes of action enacted after December 1, 1990. The Court specified that only if the claim falls under the post–1990 42 U.S.C. § 1981(b) (compared to 42 U.S.C. § 1981 which was enacted prior to December 1, 1990) would the four-year 28 U.S.C. § 1658 limitations period apply. Accordingly, in the case at bar, it is necessary to determine which provision Plaintiff Chugh's action falls under.

■ In finding that the plaintiff's claim fell under 42 U.S.C. § 1981(b), the *Jones* Court relied on *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which found that the petitioner's case fell under 42 U.S.C. § 1981(b) and not 42 U.S.C. § 1981(a). *Patterson* clarified that the post–1990 42 U.S.C. § 1981(b) amendments were deemed necessary only because the pre-existing 42 U.S.C. § 1981(a) statutory

right to make and enforce contracts did not protect against conduct that occurred after the formation of the contract. *See Jones,* 124 S.Ct. at 1839 (noting that 42 U.S.C. § 1981(b) includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship). Accordingly, an action claiming injury that arises after the formation of the employment agreement falls within the purview of 42 U.S.C. § 1981(b) and not 42 U.S.C. § 1981(a).

■ In the instant action, Plaintiff's claim falls squarely under 42 U.S.C. § 1981(b) because it arises out of conduct occurring after the formation of the employment relationship. Plaintiff Chugh was hired pursuant to a contractual agreement on October 18, 1993. Plaintiff complains of injuries allegedly sustained on or about July 15, 2000, when he reported sexual harassment to Defendant's area manager, and on or about January 8, 2001, when Plaintiff was discharged. Both alleged injuries were sustained after the formation of the contractual agreement. Accordingly, Plaintiff's claim is made pursuant to 42 U.S.C. § 1981(b) and consistent with *Jones,* is limited by the four-year limitations period of 28 U.S.C. § 1658.

Plaintiff Chugh complains of discriminatory discharge that occurred on or about January 6, 2001, and filed his complaint with this Court on or about September 19, 2003. Approximately two years and nine months have passed since the alleged injury and the filing of this suit. Accordingly, the Court holds that based on the 28 U.S.C. § 1658 four-year statute of limitations, Plaintiff's 42 U.S.C. § 1981(b) claim is timely-filed and Defendant's statute of limitations argument is rejected.

### B. *Federal Common Law Preclusion*

Although the Plaintiff's claim is not barred by the four-year statute of limitations, it may otherwise be precluded under the federal common law of preclusion. As previously set forth, *Elliott* declined to fashion a federal common law rule of preclusion applicable to Title VII actions. Notwithstanding this fact, the United State Supreme Court did in fact recognize a federal common law rule of preclusion for the other Reconstruction civil rights statutes, including 42 U.S.C. § 1981. *See Elliott,* 478 U.S. at 797–798, 106 S.Ct. 3220 ("We [see] no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century.") *Elliott* distinguished preclusion under Title VII from preclusion under the Reconstruction civil rights statutes primarily because the language in 42 U.S.C. § 2000e–5(b) indicates that Congress did not intend to give administrative findings preclusive effect in Title VII actions. *Id.* at 795, 106 S.Ct. 3220 ("Under 52 U.S.C. § 2000e–5(b), the Equal Employment Opportunity Commission (EEOC) . . . must give 'substantial weight to final findings and orders [by state administrative agencies]' . . . it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court.") No such provision governs the administration of 42 U.S.C. § 1981.

■ In the context of 42 U.S.C. § 1981, the *Elliott* Court held that "when a state agency '*acting in a judicial capacity* . . . resolves disputed issues of fact properly before it which the parties have an adequate opportunity to litigate,' federal courts must give the agency's factfinding

the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799, 106 S.Ct. 3220 (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)) (emphasis added). Accordingly, if the DCR acted in a judicial capacity in arriving at its finding of no probable cause, this Court may apply the federal common law rule of preclusion, which requires federal courts to give preclusive effect to the DCR determination if a state court would do the same. This Court notes that, if applied, N.J.S.A. § 10:5–27 would require preclusion of Plaintiff's 42 U.S.C. § 1981 claim in New Jersey state court for the reasons set forth previously.

Although there are no decisions directly on point in the Third Circuit, the Court finds persuasive the analysis of the Second Circuit in *DeCintio v. Westchester Med. Ctr.,* 821 F.2d 111 (2d Cir.1987). In *De-Cintio,* the Second Circuit considered Title VII, 42 U.S.C. §§ 1981 and 1983 claims by an employee claiming retaliatory discrimination. 821 F.2d at 112. The employee had previously filed a complaint with the New York State Division of Human Rights ("SDHR") which dismissed his complaints for lack of probable cause. *Id.* at 113. In considering whether the SDHR had acted in a judicial capacity the court noted that "the doctrines of res judicata and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies ... when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures *substantially similar to those used in a court of law.*" 821 F.2d at 117 (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)) (emphasis added). In determining that the SDHR acted in a judicial capacity, the *DeCintio* court noted that the "SDHR does not make a probable cause determination until the complainant has had 'full opportunity to present on the record, though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.'" *Id.* at 117 (citations omitted).

In New Jersey, as part of its investigation, the Director of the DCR has the power to subpoena witnesses, to take testimony, to require the production of documents for examination, and to take interrogatories and oral depositions as are deemed necessary. *See* N.J.S.A § 10:5–8(i). In addition, the DCR may convene a fact-finding conference with both parties. *See* N.J.A.C. 13:4–2.1. Also, both parties are notified of the conference date at which the parties are permitted to produce witnesses. *See* N.J.A.C. 13:4–2.3. In the DCR's "Summary of Investigation" report, the Division indicated that it had interviewed the Plaintiff as well as the Defendant regarding the employment discrimination and harassment claims. Furthermore, the Division interviewed all of the Plaintiff's witnesses and reviewed relevant personnel files of the Defendant. The Division's investigation did not produce any evidence to corroborate the Plaintiff's charges. The investigative findings were disclosed to the Plaintiff and he was permitted an opportunity to refute the Division's conclusion. The Plaintiff failed to do so. Accordingly, the DCR closed the case with a finding of no probable cause.

Based on this course of events, the Court finds that the DCR acted in a judicial capacity in adjudicating the Plaintiff's NJLAD claim. Thus, the federal common law of preclusion requires that the Court defer to N.J.S.A. § 10:5–27. Plaintiff's 42 U.S.C. § 1981 claim is thereby precluded

by the DCR's determination, and Defendant's motion to dismiss for failure to state a claim is granted.

CONCLUSION

For the reasons stated herein, IT IS on this 9th day of July, 2004, hereby,

ORDERED that Defendant's motion to dismiss with respect to the New Jersey Law Against Discrimination claim is GRANTED; and it is

FURTHER ORDERED that Defendant's motion to dismiss with respect to the Title VII claim is DENIED; and it is

FURTHER ORDERED that Defendant's motion to dismiss with respect to the 42 U.S.C. § 1981 claim is GRANTED.

It is so ordered.