

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-2009

# Tice v. Bristol Myers Squibb

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3977

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Tice v. Bristol Myers Squibb" (2009). *2009 Decisions.* Paper 1567.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1567

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3977

CAROL H. TICE,

Appellant

v.

BRISTOL-MYERS SQUIBB COMPANY

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 06-cv-01719)
District Judge:  Honorable Joy Flowers Conti

Argued November 20, 2008

Before: FUENTES, HARDIMAN and GARTH, *Circuit Judges*.

(Filed: April 8, 2009)

Douglas C. Hart (Argued)
Leech, Tishman, Fuscaldo & Lampl
525 William Penn Place
30th Floor, Citizens Bank Building
Pittsburgh, PA 15219-0000
        *Attorney for Appellant*

Judith E. Harris (Argued)
Richard J. DeFortuna
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103-0000

*Attorneys for Appellee*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

This appeal presents a question of first impression: whether an administrative ruling under the Sarbanes-Oxley Act may have preclusive effect on a subsequent discrimination claim brought in federal court. We hold that it may, largely for the reasons set forth in the District Court's comprehensive opinion.

I.

Appellant Carol Tice was a pharmaceutical salesperson for Bristol-Myers Squibb Co. for almost two decades, until she was fired in 2005. Tice claims that her termination was based on gender in violation of 42 U.S.C. § 2000e (Title VII), and age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 (ADEA).[1] In a separate claim previously adjudicated before an administrative law judge, Tice unsuccessfully argued that she was fired for reporting illegal corporate activity in violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A(b)(2) (SOX). Bristol-Myers has consistently stated that Tice was fired for falsifying sales reports and failing to account for a significant portion of her assigned inventory of sample medications.

———————

[1]Tice's suit also involves a claim under the Pennsylvania Humans Relations Act (PHRA), governed by the same standards as her Title VII claim. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 919 (3d Cir. 1997).

2

Tice was terminated on April 13, 2005. She filed a SOX claim with the Occupational Safety and Health Administration a month later, which was heard by an Administrative Law Judge (ALJ) in January 2006. The ALJ rejected the SOX claim in April 2006. In December 2006, almost a year after her SOX administrative hearing, Tice brought suit in federal district court under Title VII and the ADEA.[2]

In support of her SOX claim, Tice argued that Bristol-Myers salespeople falsified reports under corporate pressure to do so. Tice claimed that she was fired for reporting this activity, in violation of SOX. The ALJ rejected these allegations, finding that Tice "was terminated for the act of falsifying calls [herself], not for the reporting of doing so." *Tice v. Bristol-Myers Squibb Co.*, 515 F. Supp. 2d 580, 588 (W.D. Pa. 2007) (quoting ALJ). Tice admitted to falsifying her sales call reports, but justified doing so because of purportedly unrealistic goals set by her manager. The ALJ concluded that "Bristol-Myers demonstrate[d] by clear and convincing evidence that it would have disciplined Tice or terminated her even in the absence of [any] protected activity." *Tice,* 515 F. Supp. 2d at 586 (quoting ALJ). Because Tice failed to establish that the justification proffered by Bristol-Myers was pretextual, the ALJ rejected Tice's SOX claim.

---

[2]It is not clear when Tice initiated her Title VII claim with the Equal Employment Opportunity Commission. Her right to sue letter was issued on September 26, 2006. At oral argument, Tice's counsel characterized her SOX and Title VII claims as "parallel" proceedings, in an effort to refute the impression that the Title VII claim was an improper method of collaterally attacking the SOX judgment. This is contrary to Tice's brief, which states that she "instituted the underlying action by filing a Complaint against Bristol-Myers . . . following the conclusion of the SOX proceedings." Appellant's Br. 9. Even assuming that the Title VII and SOX claims were "parallel proceedings," the relative timing of the actions is immaterial to our decision.

After the ALJ ruled against her, Tice had a statutory right to appeal. SOX states that a plaintiff "may obtain review of [the final agency decision] in the United States Court of Appeals for the circuit in which the violation . . . allegedly occurred or the circuit in which the complainant resided on the date of such violation." 49 U.S.C. § 42121(b)(4)(A); 18 U.S.C. § 1514A(b)(2) (referring to 49 U.S.C. § 42121(b)(4)(A)). The statute also provides that "[a]n order . . . with respect to which review could have been obtained under subparagraph (A) *shall not be subject to judicial review in any criminal or other civil proceeding*." *Id.* § 42121(b)(4)(B) (emphasis added).

Tice chose not to appeal the ALJ's decision, but pursued Title VII and ADEA claims in federal court, arguing that she was fired because of her age and gender. In support of these claims, Tice alleged that her manager was motivated to retaliate against her because of a sexual harassment claim she filed previously. Instead of relying upon any specific facts indicating age or sex discrimination, Tice alleges that she was fired for reporting SOX violations while unidentified younger and male employees were not fired.

Under the burden-shifting analysis that governs Title VII, ADEA, and SOX claims, the burden of production shifts to the defendant after a plaintiff establishes a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer can then produce evidence of a non-discriminatory or non-retaliatory motive for its actions, the burden shifts back to the plaintiff to produce evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

4

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

The ALJ who rejected Tice's SOX claim determined that Bristol-Myers had a legitimate, non-pretextual reason for firing Tice. Although the plain language of SOX dictates respect for final agency decisions, Tice argues that she should be allowed to litigate anew in federal court the reason for her termination. In support of this argument, Tice cites the general rule entitling Title VII and ADEA plaintiffs to *de novo* review in federal court following an initial hearing before a state or federal agency. *See Astoria Fed. Savings & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (unreviewed state agency decisions have no preclusive effect on ADEA claims brought subsequently in federal court because ADEA requires *de novo* review); *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986) (unreviewed state agency decisions have no preclusive effect on discrimination claims brought subsequently in federal court because Title VII requires *de novo* review); *Chandler v. Roudebush*, 425 U.S. 840 (1976) (federal employee entitled to *de novo* review in district court after internal administrative adjudication of her discrimination claim by her agency employer). *But see Kremer v. Chem. Constr. Corp.*, 456 U.S. 461 (1982) (full faith and credit principles require federal courts to give preclusive effect to state agency decisions that have been reviewed by a state court). To bolster her argument, Tice points to a SOX provision stating that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law." 18 U.S.C. § 1514A(d).

5

The District Court rejected Tice's argument, finding that *de novo* review of Title VII and ADEA claims does not extend to issues adjudicated in a SOX proceeding. The Court noted that Tice could "arguably . . . establish a prima facie case for age discrimination and sex discrimination," *Tice*, 515 F. Supp. 2d at 590, but granted summary judgment for Bristol-Myers because the ALJ's ruling precluded Tice from challenging the company's legitimate, non-pretextual reason for firing her. We repeat at length Judge Conti's cogent and thorough collateral estoppel analysis:

> In this case, plaintiff was afforded a full and fair opportunity to litigate during a federal administrative proceeding that was not part of the statutory framework of a Title VII or ADEA claim, but rather was part of the statutory framework of a SOX claim. The factual issues whether defendant's stated reason for firing her was truthful and whether defendant consistently followed its policy and fired employees who filed false reports were determined with respect to plaintiff's SOX claim in a final order of the Secretary of Labor. The prior administrative proceeding was of a judicial nature, consisting of full discovery, testimony under oath by witnesses, cross-examination of witnesses, oral arguments and briefs presented by competing sides, and a reasoned opinion written by an administrative law judge. During the administrative hearing, material issues were whether Bristol-Myers' stated reason for terminating plaintiff was truthful and whether it consistently followed its policy and fired employees, like plaintiff, who filed false reports. Those issues were actually litigated and the ALJ determined that plaintiff was fired because she falsified sales call reports. Bristol-Myers proved this fact by clear and convincing evidence. The ALJ also found that defendant consistently followed its policy of firing employees who falsified reports. Simply put, plaintiff was terminated because she violated company policy. Plaintiff now seeks to place the same factual issues which were resolved in connection with her SOX claim at issue. Plaintiff, however, is precluded by statute from collaterally attacking the decision which became the final order in her SOX claim. All requirements for use of the doctrine of issue preclusion are met and this court must conclude that plaintiff cannot relitigate those factual issues. Use of the doctrine of collateral estoppel is appropriate under these specific circumstances involving a final order of the Secretary of Labor in a SOX

6

claim by reason of the statutory prohibition on collateral attack of that order.

*Id.* at 600.  Tice filed this timely appeal.[3]

## II.

We must reconcile the general presumption of *de novo* review of Title VII and ADEA claims in federal court with explicit language in SOX affirming the preclusive effect of agency rulings.  Tice extols the former principle over the latter, but her argument fails because the rule that Title VII and ADEA plaintiffs are entitled to *de novo* review in federal court is not as expansive as Tice suggests.

## A.

Title VII was enacted to "assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin."  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974).  "To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit."  *Id.*   Before a federal complaint may be brought under Title VII, one must "file[] timely a charge of employment discrimination with the [EEOC], and . . . receive[] and act[] upon the Commission's statutory notice of the right to sue."  *Id.* at 47.

---

[3]The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291.

Federal courts retain "plenary powers to secure compliance with Title VII," exercising *de novo* review if the EEOC rejects a plaintiff's claim. *Id.* at 44-45. Title VII plaintiffs are also entitled to *de novo* review in federal court following adjudication within the federal agency where they are employed, *Chandler*, 425 U.S. at 845-46, or by a state agency tasked with remedying employment discrimination, *Elliott*, 478 U.S. at 796. *See also Solimino*, 501 U.S. at 110-11 (similarly requiring *de novo* review in federal court of state agency decisions under the ADEA).

Title VII's general grant of *de novo* review conflicts with the "obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Solimino*, 501 U.S. at 108. For this reason, final agency decisions outside the Title VII context normally have preclusive effect in federal courts pursuant to the doctrines of collateral estoppel and res judicata. *See Elliott*, 478 U.S. at 798 ("[G]iving preclusive effect to administrative factfinding serves the value underlying general principles of collateral estoppel: enforcing repose. This value . . . is equally implicated whether factfinding is done by a federal or state agency."); *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966) ("Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have adequate opportunity to litigate, the courts have not hesitated to apply res judicata to

8

enforce repose."). The valuable interests served by collateral estoppel include "reliev[ing] parties of the cost and vexation of multiple lawsuits, conserv[ing] judicial resources, and, by preventing inconsistent decisions, encourag[ing] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Nevertheless, the "suitability [of preclusion] may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedure." *Solimino*, 501 U.S. at 109-10. In determining whether the prior judgment of an administrative agency has preclusive effect in a subsequent Title VII or ADEA claim, "the question is not whether administrative estoppel is wise but whether it is intended by the legislature." *Id.* at 108. Because "a common-law rule of preclusion would [not] be consistent with Congress' intent in enacting Title VII," adjudication of *discrimination claims arising under Title VII* by certain state or federal agencies generally does not preclude relitigation of these claims in federal court. *Elliott*, 478 U.S. at 796.

In some situations, however, prior proceedings may have preclusive effect in the subsequent litigation of a Title VII or ADEA claim. For example, if a plaintiff obtains review of a state agency decision in state court, then the countervailing principles of full faith and credit bar her from relitigating the same issues in federal court, notwithstanding the general presumption of *de novo* review. *Kremer*, 456 U.S. at 477-78. "Nothing in the legislative history of [Title VII] suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court." *Id.* at 473. In *Kremer*, the Supreme Court rejected the claim that Congress'

9

choice to erect a framework for Title VII litigation in which state and federal agencies act as checkpoints along a path to ultimate adjudication in federal court diminishes respect for collateral judgments made outside of that framework: "[O]ur language should not be read to imply, that by vesting final responsibility in one forum, Congress intended to deny finality to decisions of another." *Id.* at 477.

Likewise, when an employee consents to compulsory arbitration as a condition of employment, the Federal Arbitration Act prohibits collateral attack on the arbitrator's judgment. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (ADEA context); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998) (applying *Gilmer* in Title VII context). *But see Gardner-Denver*, 415 U.S. at 47-54 (holding that arbitration pursuant to *collective bargaining agreements* cannot preclude subsequent litigation of Title VII claims in federal court). The fact that arbitration might preclude a plaintiff's federal court action is not contrary to the purpose of Title VII, because the EEOC has independent authority to investigate allegations in furtherance of the statute's goals. *Gilmer*, 500 U.S. at 28.

In sum, an exception to the general rule that administrative decisions are entitled to preclusive effect has been recognized when discrimination proceedings are brought before agencies falling within the framework contemplated by Title VII and ADEA. *See Solimino*, 501 U.S. at 108-09 (concluding that general presumption in favor of administrative estoppel is implicitly rebutted by ADEA). In *Chandler*, *Elliott*, and *Solimino*, underlying administrative decisions were not preclusive where a subsequent

10

federal action under Title VII effectively served as a *de novo* appeal of the original discrimination claim. *See, e.g.*, *Elliot*, 478 U.S. at 795-96 (concluding that Congress intended discrimination plaintiff who lost at the administrative level "to have a trial *de novo* on his Title VII claim"). In each case, the plaintiff's basic legal theory was the same before the agency and the court: illegal discrimination on the basis of a characteristic protected by Title VII or ADEA. *Elliott's* reliance on this premise was explicit:

> Like the plaintiff in *Chandler*, the respondent in [*Elliott*] pursued his Title VII action following an administrative proceeding *at which the employing agency rejected a discrimination claim*. It would be contrary to the rationale of *Chandler* to apply *res judicata* to deny respondents a trial *de novo* on his Title VII claim.

*Elliott*, 478 U.S. at 796 (emphasis added). *Elliott* further noted that "EEOC review . . . *of discrimination charges* previously rejected by state agencies would be pointless if the federal courts were bound by such agency decisions." *Id.* at 793 (emphasis added).

This premise is intuitive because, within the Title VII framework, according preclusive effect to underlying agency decisions would eviscerate the ultimate responsibility that Congress placed with the judiciary by depriving aggrieved parties of a federal forum. *See Solimino*, 501 U.S. at 111-12 (holding that state administrative findings in an age discrimination claim are not preclusive in a subsequent ADEA case in federal court because "such federal proceedings would be strictly *pro forma* if state administrative findings were given preclusive effect," and because "preclusion would . . . reduce to insignificance those cases in which federal consideration might be pursued in the wake of the completed proceedings of state agencies"). "Denial of preclusion in Title

11

VII and [ADEA] cases [thus] reflects respect for the relationship between state and federal agencies *established by these specific statutory schemes*, not doubts about the general preclusion rule." 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4471.3 (2008) (emphasis added).

Different countervailing interests are at stake in applying collateral estoppel in a Title VII action to bar relitigation of an issue decided in the course of a *non-discrimination proceeding* tangential to the plaintiff's subsequent Title VII claim. The foregoing purposes are not served by extending *de novo* judicial review to nullify the preclusive effect of non-discrimination claims adjudicated outside of the normal Title VII framework. As the Supreme Court has repeatedly indicated, the question is whether Congress intended a particular proceeding to have preclusive effect on Title VII claims. *See Solimino*, 501 U.S. at 108; *Chandler*, 425 U.S. at 859-690; *Elliott*, 478 U.S. at 796. We turn now to that question.

B.

In this case, Tice elected to pursue a claim under SOX. Her claim fell outside of the framework contemplated by Title VII because it did not allege discrimination based on a protected characteristic, but rather retaliation for blowing the whistle on illegal corporate activity. Congress has clearly stated that administrative findings in a SOX case are subject to review only by direct appeal, not collateral attack. *See* § 42121(b)(4)(B).

After losing at the agency level, Tice chose not to appeal her SOX claim. This

12

does not necessarily prevent Tice from arguing that her termination was improper for entirely different reasons in another forum. However, given SOX's explicit prohibition against collateral attack, it does prevent her from relitigating issues specifically decided in the course of her SOX proceedings. According preclusive effect to the ALJ's finding of Bristol-Myers's legitimate, non-pretextual reason for firing Tice comports with the plain language of SOX as well as the general purpose of Title VII. Our holding thus reconciles the seemingly conflicting mandates of Title VII and SOX, in the same way that the Supreme Court sought to "harmoniz[e]" ADEA and the full faith and credit requirement "insofar as two statutes are capable of coexistence." *Solimino,* 501 U.S. at 109.

This is not to say that all issues adjudicated in the course of a non-discrimination claim will necessarily have preclusive effect in a subsequent Title VII claim. In fact, we have categorically rejected the preclusive effect of any administrative decision made by a state agency — whether or not part of the Title VII framework — unless reviewed by a state court. *See Roth v. Koppers Indus.*, 993 F.2d 1058, 1062 (3d Cir. 1993) (state unemployment agency's ruling that employee had just cause to resign was not entitled to preclusive effect, in part because "unreviewed administrative agency findings can never be accorded preclusive effect in subsequent Title VII proceedings"); *Caver v. City of Trenton*, 420 F.3d 243, 258-59 (3d Cir. 2005) (same result where police officer successfully challenged his termination in state administrative proceedings, then brought a discrimination claim under Title VII). However reasonable it was to conclude that

13

Congress did not intend for those proceedings to have preclusive effect under Title VII, the same cannot be said here. In this case, Congress explicitly provided that when the federal agency adjudicates a claim arising under SOX, that claim is not amenable to collateral attack in any other forum. This legal precept applies notwithstanding the general presumption of *de novo* review under Title VII.[4]

## C.

Both Tice and our dissenting colleague have raised colorable arguments against preclusion. We acknowledge that the result is not readily apparent because of the tension between the conflicting mandates of Title VII and § 42121(b)(4)(B). Nevertheless, we believe that our reading of the SOX statute — which adheres to its plain language — is the most natural reading in light of general preclusion principles and the exceptions carved out under Title VII. Before engaging the contrary arguments, we begin by explaining our view that the premise underlying the dissenting opinion is invalid.

The Dissent believes that the presumption of *de novo* review under Title VII may be overcome only "where Congress has manifested a *clear intent* to set it aside." Dissent I. However, the precedent cited by the Dissent in support of this premise says the opposite. According to *Solimino*, "legislative repeals by implication will not be

---

[4]The Dissent correctly notes that principles of federalism are no basis for distinguishing between the preclusive effect of state and federal agency decisions. Our distinction is not between state and federal agencies, *per se*, but rather between state agencies in general, and a federal agency whose final judgments have been explicitly deemed immune to collateral attack.

14

recognized, insofar as two statutes are capable of coexistence, absent a clearly expressed congressional intention to the contrary." 501 U.S. at 109. The Dissent reads this language to define how explicitly Congress must speak in conferring preclusive effect upon administrative judgments in subsequent Title VII or ADEA cases. In fact, the language cited by the Dissent refers to the putative repeal by Title VII of a statutory provision mandating preclusion, not vice versa. In *Kremer*, the Supreme Court held that the general presumption of *de novo* review under Title VII was insufficient to override the full faith and credit statute, so federal courts must grant preclusive effect in Title VII actions to prior agency decisions reviewed by state courts. 456 U.S. at 485. *This* is the circumstance in which a clear statement is necessary, according to *Solimino*.

In this case, the question is whether administrative judgments under a separate statutory scheme are entitled to preclusive effect in a Title VII or ADEA action. *Solimino* specifically says that the answer to this question – unlike the question posed in *Kremer* – does *not* require a clear statement, because "the possibility of an implied [legislative] repeal does not cast its shadow here." *Solimino*, 501 U.S. at 109. Simply put, the contours of the preclusion doctrine under Title VII and the ADEA are not statutory (they have been defined by the Supreme Court in the foregoing cases) so there is nothing to repeal. The Court could not have been more explicit when it said that legislative intent with respect to preclusion does "*not* . . . entail[] a requirement of clear statement . . . [because] [r]ules of plain statement and strict construction prevail only to the protection

15

of weighty and constant values, be they constitutional . . . or otherwise." *Id.* at 108 (citations omitted) (emphasis added). Therefore, in *Solimino*, the Court concluded that the ADEA's filing requirements were sufficient evidence that "collateral estoppel is not to apply," even though "the statute contains no express delimitation of the respect owed to state agency findings." *Id.* at 110-11.[5]

D.

Having explained our disagreement of the Dissent's premise, we turn now to the arguments against preclusion raised by Tice and the Dissent.

Tice argues that the SOX provision stating that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law," § 1514A(d), confers upon her a right to *de novo* review in federal court. We disagree.

As we have explained, there is no absolute right to *de novo* review in federal court of all issues arising in a Title VII claim, especially not with respect to issues previously adjudicated outside of the normal Title VII framework. Our ruling does not diminish a plaintiff's pre-existing Title VII rights, but merely clarifies the extent of those rights. Contrary to the Dissent's suggestion, we are not "creat[ing] a new rule," much less one that

---

[5]Not only does the clear statement rule not apply, but Congress' intent is much clearer in this case than in *Solimino*, where merely *implicit* intent with respect to preclusion was deemed sufficient to override the general presumption of administrative estoppel. In this case, there is *explicit* intent in § 42121(b)(4)(B) to affirm the presumption of administrative estoppel.

"prohibits relitigation when the claim was merely tangential and addressed only in passing" by the original fact-finder. Dissent I. First, our holding is based on the well established rule that administrative estoppel is presumptively appropriate. It merely reconciles the qualified exception for discrimination claims brought within the framework contemplated by Title VII with Congress's express intent to protect the finality of SOX adjudications. Moreover, preclusion is entirely appropriate in this particular case because the issue of Bristol-Myers's legitimate, non-pretextual reason for firing Tice was not "tangential" or "addressed in passing," but was squarely addressed by the ALJ and essential to his decision.

Tice claims that she has not had a "full and fair opportunity to litigate the underlying issues" in the present case. Appellant's Br. 20. Regardless of whether the elements of Tice's prima facie case differ under Title VII and SOX, the fact remains that both prima facie cases are rebutted by the same legitimate, non-pretextual justification for her termination: the falsification of sales records. This is the relevant issue for purposes of our preclusion analysis.

The Dissent objects that our holding unduly burdens mixed-motive plaintiffs by binding them to findings made by an ALJ under SOX when a Title VII claim is pending in federal court. Although forcing litigants to strategically choose the most colorable among several competing theories of recovery might otherwise be a legitimate purpose of collateral estoppel, we agree that § 1514A(d) refutes such intent in this case. But our decision does not burden legitimate mixed-motive Title VII plaintiffs, who remain free to assert entirely

17

separate reasons for their termination under *Fuentes*.[6] Preclusion is dispositive in this case only because Tice challenges the ALJ's finding that Bristol-Myers had a legitimate, non-pretextual reason to fire her, rather than arguing that she was fired for discriminatory reasons *in addition to* the legitimate reason established in the SOX proceedings.

III.

In sum, we find that normal preclusion principles apply here because SOX falls outside of the general Title VII framework and explicitly prohibits collateral attacks. Accordingly, the District Court correctly held that Tice is barred from relitigating the ALJ's determination that she was fired for falsifying sales reports. We will affirm.

Tice v. Bristol-Myers Squibb Co., No. 07-3977

GARTH, Circuit Judge, dissenting in part and concurring in part:

By holding that the findings of an unreviewed administrative agency have preclusive effect in subsequent Title VII and ADEA cases, I believe the majority opinion has jettisoned

---

[6]The discrimination analysis set out in *Fuentes* outlines an alternative theory for proving discrimination: since discrimination need not be the sole motivating reason for mistreatment to trigger liability under Title VII or the ADEA, Tice could show that although she was fired for falsifying sales reports, other evidence shows that "an invidious discriminatory reason was" also a motivating reason for her termination. 32 F.3d at 764; *see also Miller v. CIGNA Corp*., 47 F.3d 586, 593-94 (3d Cir. 1995) (en banc) (holding that ADEA's requirement that a discharge decision be "because of" an employee's age does not require that it by "solely because of" age); *Wilson v. Susquehanna Twp. Police Dept.*, 55 F.3d 126, 130 (3d Cir. 1995) (applying *Miller* to Title VII sex discrimination claim).

18

Supreme Court and Third Circuit precedents. Accordingly, although I concur in affirming the judgment of the District Court, I write separately because the majority holds that Congress *intended* SOX to predominate over other federal statutes such as Title VII and ADEA. I find no such intent.

## I.

I adhere to our precedents and our longstanding principle that "unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII and ADEA proceedings." Roth v. Koppers Indus. Inc., 993 F.2d 1058, 1062 (3d Cir. 1993) (citing Chandler v. Roudebush, 425 U.S. 840 (1976); Univ. of Tenn. v. Elliott, 478 U.S. 788 (1986)); see also Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991) (extending this rule to ADEA claims). By contrast, the majority holds that Congress intended SOX to trump Title VII/ADEA on the basis of one sentence in 49 U.S.C. § 42121(b)(4): "An order of the Secretary of Labor [under this section] shall not be subject to judicial review in any criminal or other civil proceeding."

The principle of a *de novo* trial in Title VII/ADEA claims is firmly established. See, e.g., Chandler, 425 U.S. at 861 ("Nothing in the legislative history indicates that . . . 'civil action' was to have [a] chameleon-like character, providing fragmentary *de novo* consideration of discrimination claims where 'appropriate.'"). The only extent to which it is not "absolute" is where Congress has manifested a *clear intent* to set it aside, or where it conflicts with prior statutes. See Solimino, 501 U.S. at 109 ("[L]egislative repeals by

19

implication will not be recognized, insofar as two statutes are capable of coexistence, 'absent a clearly expressed congressional intention to the contrary.'" (citation omitted)); see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644 (2007). In the Sarbanes-Oxley Act, Congress has manifested no such intent.

Judge Hardiman argues that the *de novo* rule is limited to review of decisions by state administrative agencies, but his opinion does not cite to any court or opinion that has raised this distinction. The Supreme Court's statement of the rule is, in my opinion, more controlling: Title VII contains "a 'specific statutory authorization' for a district court 'civil action,' which both the plain language of the statute and the legislative history reveal to be a trial *de novo*." Chandler, 425 U.S. at 862; see also Elliott, 478 U.S. at 796 (declining to distinguish Chandler on the grounds that it had involved a federal agency rather than a state agency). While it is true that most of the relevant case law happens to involve state agency decisions rather than federal agency decisions, the Supreme Court has refused to draw a federal/state distinction in this regard. See, e.g., Elliott, 478 U.S. at 796, 798 ("[T]he value underlying general principles of collateral estoppel . . . is equally implicated whether factfinding is done by a federal or state agency"); Solimino, 501 U.S. at 108.

Thus, the only way for SOX to take precedence over Title VII and ADEA is for Congress to have *clearly* expressed its intent to narrow the scope of the established rule of Title VII/ADEA *de novo* trial. But nowhere does this clear intent appear in the relevant statutes, and Judge Hardiman's opinion does not provide us with a guide where we might

20

find such an intent. We may look long and hard, but Title VII/ADEA is never mentioned or alluded to in the text or legislative history of SOX or of § 42121. Thus, I am unable to agree that, by *adding* a cause of action for wronged employees under SOX, Congress intended simultaneously to weaken the extant anti-discrimination framework of Title VII and ADEA.

The language in § 42121 is simply boilerplate text, intended to focus upon the administrative appeals *process* rather than to encroach upon the substance of other statutory schemes. The exact same provision, relied upon by the majority here, appears in at least eight independent statutes.[7] If Congress truly intended in each instance to use this language to restrict the right to *de novo* trial in anti-discrimination actions, the silence in the legislative history is deafening.

Moreover, the text of § 42121 is couched merely in terms of "review," rather than

---

[7] The earliest reference appears to be in the Safe Drinking Water Act, Pub. L. No. 93-523, § 1450, 88 Stat. 1660 (1974) (codified at 42 U.S.C. § 300j-9(i)(3)(B)). Additional references are contained in at least seven other statutes. Consumer Product Safety Improvement Act of 2008, Pub. L. No. 110-314, § 219, 122 Stat. 3062 (codified at 15 U.S.C. § 2087(b)(5)(B)); 9/11 Commission Act of 2007, Pub. L. No. 110-53, § 1413, 121 Stat. 266, 418 (codified at 6 U.S.C. § 1142(c)(4)(B)); Pipeline Safety Improvement Act of 2002, Pub. L. No. 107-355, § 6(a), 116 Stat. 2985 (2002) (codified at 49 U.S.C. § 60129(b)(4)(B)); Aviation Investment and Reform Act, Pub. L. No. 106-181, § 519(a), 114 Stat. 61 (2000) (codified at 49 U.S.C. § 42121(b)(4)(B)); Energy Reorganization Act of 1974, Pub. L. No. 95-601, sec. 10, § 210, 92 Stat. 2947 (1978) (codified as amended at 42 U.S.C. § 5851(c)(2)); Clean Air Act Amendments of 1977, Pub. L. No. 95-95, sec. 312, § 322, 91 Stat. 685 (1977) (codified as amended at 42 U.S.C. § 7622(c)(2)); and Toxic Substances Control Act, Pub. L. No. 94-469, § 23, 90 Stat. 2003 (1976) (codified at 15 U.S.C. § 2622(c)(2)). Other statutes may incorporate by reference in the manner of SOX. See 18 U.S.C. § 1514A(b)(2).

initial determination.  In <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36 (1974), preclusive effect was denied where the Title VII claim previously had been considered in an arbitral forum, even though the arbitrator's decision was final and binding and judicial review was limited.  In so holding, the Court stated that,"in instituting an action under Title VII, the employee is not seeking *review* of the arbitrator's decision.  Rather he is asserting a statutory right independent of the arbitration process."  <u>Id.</u> at 54 (emphasis added).  Likewise, a plaintiff who institutes an action under Title VII subsequent to a decision under SOX by the Secretary of Labor, as Tice has here, is not seeking review of the SOX decision but rather is asserting an independent statutory right.

Allowing SOX to trump Title VII/ADEA not only ignores Supreme Court and Third Circuit precedents,[8] but also eviscerates sound policy and good common sense.  The majority's opinion sets up a fractious system where employees with legitimate claims under both Title VII/ADEA and SOX effectively are deterred from filing simultaneous complaints with the EEOC and OSHA because early adjudication by one agency would preclude their claims pending before the other—to say nothing of the district court.[9]  <u>Cf.</u> <u>Elliott</u>, 478 U.S.

_____

[8] <u>See</u> <u>Roth v. Koppers Indus. Inc.</u>, 993 F.2d 1058 (3d Cir. 1993); <u>Univ. of Tenn. v. Elliott</u>, 478 U.S. 788 (1986); <u>Chandler v. Roudebush</u>, 425 U.S. 840 (1976); <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104 (1991).

[9] Under the existing statutory schemes, a plaintiff must first file separate complaints with each respective agency.  <u>See</u> 18 U.S.C. § 1514A(b)(1) (allowing action in district court under SOX only "if the Secretary [of Labor] has not issued a final decision within 180 days"); 29 C.F.R. § 1601.28 (mandating issuance of notice of right to sue under Title VII only after 180 days has passed since the filing of a charge with the EEOC); 29 U.S.C. § 626(d) (prohibiting the filing of a civil action under the ADEA until 60 days after a

22

at 796 n.5 ("'[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.'" (citation omitted)).

Therefore, given that relitigation is permitted when the claim in an administrative court was identical and directly investigated by the agency created specially for that task, it is perverse for the majority to create a new rule prohibiting relitigation when the claim was merely tangential and addressed only in passing by an agency appointed for another task. Cf. Gardner-Denver, 415 U.S. at 56 ("'[T]he choice of forums inevitably affects the scope of the substantive right to be vindicated.'" (quoting U.S. Bulk Carriers v. Arguelles, 400 U.S. 351, 359-60 (1971) (Harlan, J., concurring))).

The majority claims its position is supported by two exceptions: the full faith and credit statute, and compulsory arbitration under the Federal Arbitration Act (FAA). It is not. While the majority claims these exceptions demonstrate that there is "no absolute right to *de novo* review in federal court of all issues arising in a Title VII claim," majority op. 17, they instead prove the rule.

### A. The First Exception

One of the fundamental tenets of our judicial system is that federal courts are required to give "full faith and credit" to the "judicial proceedings of any court of any . . . State." 28 U.S.C. § 1738. In Kremer v. Chem. Constr. Corp., 456 U.S. 461 (1982), the Supreme Court

_____

charge has been filed with the EEOC).

23

held that a *de novo* trial pursuant to Title VII was precluded where a state *court* had reviewed the state administrative agency's decision. Because the state court's review triggered § 1738 and accordingly required the application of full faith and credit, permitting a *de novo* trial in federal court of a final judgment of a state court would have implicitly repealed the full faith and credit statute. Thus, absent clear congressional intent, Title VII could not supercede the full faith and credit statute (just as SOX does not supercede Title VII). Id. at 470-72 ("[A]n implied repeal must ordinarily be evident from the language or operation of a statute . . . [and the legislative history of Title VII] plainly do[es] not demonstrate that Congress intended to override the historic respect that federal courts accord state court judgments.").

### B. The Second Exception

Nor does Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), undermine the general rule of a *de novo* trial under Title VII/ADEA. Rather, Gilmer stands for the proposition that an employee may voluntarily *waive* this statutory right, and that the text and legislative history of the ADEA do not preclude such waiver. See id. at 26 (requiring a showing "that Congress intended to preclude a waiver of a judicial forum for ADEA claims"). This holding does not eviscerate the existence of the right to a *de novo* trial; to the contrary, it affirms its viability. Moreover, the Court constructed this exception with particular care, after repeatedly denying preclusive effect in the related context of collective bargaining. See, e.g., McDonald v. City of West Branch, 466 U.S. 284 (1984); Barrentine

24

v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981); Gardner-Denver, 415 U.S. 36.

The care with which the Supreme Court carved out these two exceptions attests to the strength of the principle that Title VII and ADEA claims are entitled to *de novo* trial in federal court.

Without more, the Sarbanes-Oxley Act, either in purpose or in text, cannot be said to diminish the force of the precedents I have cited, which unambiguously hold that unreviewed agency findings—such as the one that dealt with Tice's claim here—have no preclusive effect on Title VII or ADEA claims.

## II.

One further comment must be made, and because it has assumed the importance that it does in the majority opinion, I feel it must be corrected. The majority opinion, in Section II.C, reads the language in Solimino, 501 U.S. 104 (1991), as holding that the "clear intent" rule does not apply to Title VII preclusion. It is mistaken. Solimino states only that the "clear intent" rule does not apply to *administrative* preclusion, precisely because *administrative* preclusion does not "represent independent values of such magnitude and constancy as to justify the protection of a clear statement rule." 501 U.S. at 109.

By contrast, the "clear intent" rule does apply to Title VII, and it applies specifically here because SOX is a federal statute conflicting with Title VII. Indeed, if the preclusion doctrine under Title VII were non-statutory and thus subordinate to other statutes, as the majority suggests, then the "clear statement" rule would not have been invoked in Kremer,

25

456 U.S. at 468-76, to resolve a conflict between principles of preclusion under Title VII and the full faith and credit statute because the latter would have clearly trumped. The fact that it was invoked at all demonstrates that Title VII is not automatically subordinate to SOX. In Kremer, Title VII yielded because it was enacted subsequent to, and did not repeal, the full faith and credit statute. See id. at 468 ("[A]n exception to § 1738 will not be recognized unless a *later* statute contains an express or implied partial repeal." (emphasis added)). Likewise, SOX is subordinate to Title VII, not only because of policy considerations and common sense, see supra, but because SOX was enacted long after Title VII and there is no evidence in either § 42121 or 18 U.S.C. § 1514A of even a glimmer of express or implied repeal.

### III.

Nevertheless, mindful of the doctrine that the decision of a lower court "must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason," SEC v. Chenery Corp., 318 U.S. 80, 88 (1943), I join in affirming the District Court's grant of summary judgment to Bristol-Myers. I do so, not because the administrative findings *precluded* Tice's Title VII and ADEA claims, but because the District Court could permissibly *adopt* the ALJ's findings of fact. In doing so, the District Court properly determined that Tice had failed to demonstrate any genuine issue of material fact concerning her admitted falsifications of sales reports.

Thus, although I strongly disagree with the preclusion analysis of the majority, and

26

accordingly dissent from that analysis, I respectfully concur in the judgment which affirms

the District Court's order of September 13, 2007.